USCA1 Opinion

 

 _________________________ No. 95-1908 UNITED STATES OF AMERICA, Appellee, v. CEFERINO CRUZ, Defendant, Appellant. __________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Richard G. Stearns, U.S. District Judge] __________________________ Before Selya, Acting Chief Judge,* Bownes, Senior Circuit Judge, Boudin, Stahl and Lynch, Circuit Judges. __________________________ Diana  L.  Maldonado, Federal Defender Office, on brief for appellant. Donald  K.  Stern, United States Attorney, Carole  S.  Schwartz and Kevin P. McGrath, Assistant United States Attorneys, on brief for appellee. __________________________ July 28, 1997 __________________________ OPINION EN BANC __________________________ __________________________ *Chief Judge Torruella did not participate in this proceeding.  SELYA, Acting  Chief  Judge. This appeal involves a solitary issue: the propriety vel non of the sentencing court's decision to enhance the defendant's offense level (and, therefore, increase the ensuing sentence) by reason of what the court deemed to be the defendant's aggravating role in the offense of conviction. See USSG S3B1.1(c). The appeal was originally argued to a panel of this court. On April 30, 1997, the panel, by a two-to-one vote, determined that the sentencing court had committed clear error in its application of the role-in-the-offense guideline. Because role-in-the-offense determinations are a frequent source of appellate litigation, and because the panel decision seemed out of line with our customary approach to such determinations (and, therefore, likely to create confusion in future cases), we elected to reconsider the matter en banc. To that end, we withdrew the panel opinion and solicited supplemental briefs from the parties. We now uphold the district court's application of the USSG S3B1.1(c). We cull the facts from the plea colloquy, the presentence investigation report (PSI Report), and the transcript of the sentencing hearing. See United States v. Tejada-Beltran, 50 F.3d 105, 107 (1st Cir. 1995); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991). In conducting this tamisage, we are mindful that a sentencing court may consider facts contained in the PSI Report as reliable evidence. See United  States v. Morillo, 8 F.3d 864, 872 (1st Cir. 1993). Moreover, for sentencing purposes the court 3 may rely upon evidence adduced at a coconspirator's trial as long as the defendant receives notice prior to its use and has the opportunity to challenge its reliability. See United  States v. McCarthy, 961 F.2d 972, 979 (1st Cir. 1992); United  States v. Berzon, 941 F.2d 8, 19 (1st Cir. 1991). Of course, this court may also consider facts which have been established by these methods. On July 28, 1994, the defendant, Ceferino Cruz, greeted Pam Mersky, an undercover Drug Enforcement Administration (DEA) agent, as she entered La Tambora, a restaurant in Lawrence, Massachusetts, which Cruz owned and operated. The defendant had met Mersky one week earlier when he sold her 30.7 grams of crack cocaine and a handgun. Alejandro Vega, later indicted as a coconspirator, approached Mersky inside the restaurant. Mersky told him that she wanted to buy crack cocaine. Vega initially feigned ignorance, but Mersky persisted. When she stated that the defendant previously had supplied her with crack, Vega engaged the defendant in a private conversation and thereafter told Mersky to come back in 45 minutes. Mersky returned to La Tambora to find Vega, but not the defendant, present. A few minutes later Jeanette Marquez joined  Here, as the panel acknowledged, the PSI Report furnished the defendant the advance notice that our case law requires. At any rate, the facts which are critical to a proper resolution of this appeal derive directly from the PSI Report and the proceedings in which this defendant was personally involved. This purchase took place at La Tambora, as did several earlier purchases of drugs, firearms, and ammunition effectuated by a confidential DEA informant. 4 them. Vega introduced Marquez as the defendant's girlfriend. Marquez (who was 14 years old and pregnant) wore a necklace showcasing the defendant's first name. Marquez delivered the crack cocaine to Mersky, and Mersky paid Vega for it. She then told Vega that she wanted to purchase a gun. Vega replied that "he" didn't realize that Mersky wanted a gun, too. In context, a factfinder reasonably could believe that the pronoun "he" referred to Cruz. In any event, Vega promised to contact Mersky after making further inquiries. Later that afternoon Vega told Mersky that he would sell her a gun. Mersky met Vega a few blocks away from the restaurant and they walked to La Tambora together. Once inside, Vega conversed privately with the defendant and thereafter handed Mersky a bag containing a gun. The gun was frigid, suggesting that it had just been removed from a freezer or other cold storage. Two subsequent events complete the picture. On August 3, Vega consulted the defendant before providing Mersky with bullets. On August 16, after Mersky expressed an interest in acquiring more crack and more firepower, Vega stated that guns were available immediately but that the crack had to be delivered. The pair strolled to La Tambora. Vega told Mersky to go behind the food counter. Marquez hailed the defendant. He appeared, saw Vega and Mersky, together, walked away without engaging in any conversation, and returned moments later with a bag containing two guns. The defendant handed the bag to Vega who, in turn, handed it to Mersky. She then inspected both weapons and purchased one of them. 5 Mersky and Vega then waited for the crack. When the courier (Sixto Garcia) arrived, he nodded to them, but met privately with Cruz. Mersky and Vega walked behind the food counter; Garcia handed Cruz a plastic bag containing the crack cocaine; Cruz gave the bag to Mersky; and Mersky, in turn, paid Vega for it. Cruz was indicted and convicted on charges of conspiracy to possess cocaine base (i.e., crack cocaine) with intent to distribute, see 21 U.S.C. S 846, and conspiracy to sell firearms illegally, see 18 U.S.C. S 922(a)(1)(A). The drug offense drove the sentencing calculus. The PSI Report urged, inter alia, a two- level upward adjustment for the defendant's leadership role. See USSG S3B1.1(c). In calculating the guideline sentencing range (GSR), the district court accepted this suggestion (overriding the prosecutor's contrary recommendation) and increased the defendant's offense level accordingly. This adjustment, together with other computations (none of which is challenged here), yielded a GSR of 135 to 168 months. The lower court then imposed an incarcerative sentence of 165 months. It is undisputed that, absent the role-in- the-offense adjustment, the GSR (and presumably the sentence) would have been less onerous. The determination of an individual's role in committing an offense is necessarily fact-specific. See United  States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995). Accordingly, appellate  Under the applicable grouping rules, the counts of conviction are treated as separate units. See USSG S3D1.2. 6 review must be conducted with considerable deference. Absent an error of law  and it is not seriously suggested that such an error infected the sentencing process in this case the sentencing court's determinations are to be set aside only for clear error. See id. Role-in-the-offense adjustments address concerns of relative responsibility. See USSG S3B1.1(c), comment. (backg'd). In this vein, the guideline provides, among other things, that "if the defendant was an organizer, leader, manager, or supervisor in any criminal activity" involving one to three other participants, the offense level should be increased by two levels. USSG S3B1.1(c). Such an increase is justified if the sentencing court supportably finds that (1) the criminal enterprise involved at least two complicit participants (of whom the defendant may be counted as one), and (2) the defendant, in committing the offense, exercised control over, organized, or was otherwise responsible for superintending the activities of, at least one of those other persons. See  Morillo, 8 F.3d at 872;  United States v.  Savoie, 985 F.2d 612, 616 (1st Cir. 1993); United States v. Akitoye, 923 F.2d 221, 227 (1st Cir. 1991). The government bears the burden of proving that a defendant qualifies for an upward role-in-the-  The fact that the government had agreed not to request the enhancement, and did not do so, does not compress the district court's discretion. The sentencing judge has the ultimate responsibility for the sentence and may decide to pursue matters in the teeth of an agreement by both sides to go in a different direction. See United  States v. Vaknin, 112 F.3d 579, 585 (1st Cir. 1997). 7 offense adjustment, and must carry that burden by a preponderance of the evidence. See United  States v. Voccola, 99 F.3d 37, 44 (1st Cir. 1996); United  States v. Ortiz, 966 F.2d 707, 717 (1st Cir. 1992). In this instance, we think that the evidence, viewed as a whole, supports the district court's finding. The record suggests that Cruz was at the center of a well-organized series of drug and weapon sales, conducted at or through the restaurant that he owned and operated. The evidence also suggests that Cruz involved various individuals not only as facilitators but also as go-betweens in an effort to limit his own apparent involvement. This pattern is familiar in many sophisticated but illegal transactions. See, e.g., United  States v. Catlett, 97 F.3d 565, 569-70 (D.C. Cir. 1996);  United States v.  Evans, 92 F.3d 540, 541- 42 (7th Cir.), cert. denied, 117 S. Ct. 537 (1996). The district judge made a specific finding that Cruz was "the motivating principal in this drug distribution scheme" and that he was a manager vis-a-vis both Vega and Marquez. Leaving Vega aside, if Cruz supervised Marquez in connection with the July 28 transaction, that incident alone would provide an adequate basis for the enhancement. See Voccola, 99 F.3d at 43-44 (explaining that a single directed transaction is enough to confer organizer or manager status); see also USSG S3B1.1, comment. (n.2). And the district court's finding is sustainable in that regard. After all, a defendant's role in the offense can be proved wholly by circumstantial evidence and the circumstances here adequately 8 support the inferences that the district court drew from them. In particular, the court's specific determinations that Cruz, age 44, "provided the impetus for the crime," "supplied the product," and, in the bargain, exercised dominance over his 14- year-old paramour in regard to the July 28 transaction, while not unarguable, pass muster under the clearly erroneous standard. Cruz had been enmeshed in trafficking with Mersky earlier. He owned La Tambora, the locus around which the illicit activity pirouetted. Moreover, Cruz was probably the "he" referred to by Vega as not knowing that Mersky wanted a gun "too." The preponderance standard obtains during the sentencing phase of a criminal case and the odds are certainly better than even that Marquez, 14 years old and pregnant, was acting at someone else's direction in serving as the transporter in a multi-party drug transaction. We think that most people would say that, as between Cruz and Vega, the strong likelihood is that Marquez acted at the direction of her much older boyfriend. Surely, a reasonable trier could conclude that this deduction is more likely true than not. Thus, the district court's appraisal that Cruz oversaw Marquez meets the preponderance test because of its logical force and inherent probability.  Despite the lessened burden of proof "fair preponderance" rather than "beyond reasonable doubt" and the deferential standard of review which pertain here, we recognize  Even if Vega and Cruz jointly controlled Marquez, Cruz would still be a manager under the guidelines.  See USSG S3B1.1, comment. (n.4). 9 that whether Cruz might be deemed an organizer or manager is a close question. Yet it would not profit us to dwell on the inferences that the defendant would have us draw from the predicate facts. While those inferences are rational and the scenario to which they lead is possible, the trial judge eschewed them in favor of different, equally permissible inferences, leading to a different scenario a scenario that depicts the defendant as a manager. In sentencing, as elsewhere in the law, when competing inferences plausibly can be drawn from a set of facts, the factfinder's choice between them cannot be clearly erroneous. See United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990). We need go no further. In the circumstances at bar, the determination of the defendant's role in the offense is fact- specific, and the facts of record reasonably can be interpreted to attribute managerial status, more likely than not, to him. That ends the matter: close, factbound questions are grist for the district court's mill, not for second-guessing by appellate judges perusing a cold record. Affirmed. Bownes, Senior  Circuit  Judge. (dissenting). I dissent from the en banc opinion because I continue to think that the original panel opinion was correct. 10