# United States Court of Appeals
## For the First Circuit

No. 01-2572

UNITED STATES OF AMERICA,

Appellee,

v.

REGINALD BROWN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Selya, Lynch and Howard, Circuit Judges

Geoffrey DuBosque for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D. Silsby, United States Attorney, was on brief, for appellee.

August 8, 2002

**HOWARD**, **Circuit Judge**.  In this appeal we must decide whether the district court committed clear error in finding that appellant Reginald Brown had a managerial role in the cocaine base ("crack") distribution conspiracy to which he pleaded guilty.  We affirm.

Brown was indicted following an investigation into distinct but overlapping crack distribution groups that were operating in the Biddeford and Saco, Maine area during the latter part of 2000 and the early part of 2001.  In the course of the investigation, law enforcement agents learned that Brown was a member of one of the groups, referred to by informants as the "Knowledge" group.  For purposes of this appeal, we focus on several encounters agents had with Brown and another member of the Knowledge group, Kenneth Scott.

On March 18, 2001, an undercover agent who had previously purchased 2.5 grams of crack from Scott went to Scott's apartment to make another purchase.  The appellant was present, introduced himself to the agent as "Knowledge," and sold him 7.5 grams of crack for $1,000.  The agent paid Scott $50 for setting up the deal.

The next day, the agent called Scott to order an additional 10 grams of crack.  Scott told the agent that he needed to contact his source in order to complete the deal but agreed to meet the agent in a car outside Scott's apartment building. Within a few minutes of the agent's arrival, Brown drove up.  The three then went into Scott's apartment, where Brown sold the agent 7.0

grams of crack for $1,000.  This time, Brown paid Scott $100 for setting up the deal.[1]

As Brown was driving away from this second sale, Saco police officers attempted to pull him over in order to arrest him. Brown led the police on a short car chase, and then abandoned the car and fled on foot.  During the foot chase, Brown attempted to hide 41.1 grams of crack he was carrying by stashing the drugs in a snowbank.  Eventually, the officers caught up with Brown, placed him under arrest, and recovered the contraband.

This was not the first time during the investigation that Brown had attempted to elude the police while possessing a substantial quantity of crack.  Four months earlier, as the police tried to stop Brown upon his return to Maine from New York, he also led them on a car and foot chase.  Pursuing agents went to Scott's apartment in their search for Brown.  Scott told the authorities that the appellant was not there, but a short while later the agents saw Brown surreptitiously run from Scott's apartment to a waiting vehicle.  The police stopped the vehicle, apprehended Brown, and eventually recovered a bag containing 288.7 grams of crack.  Brown admitted that the crack was his.[2]

---

[1]At sentencing, the appellant testified that he had paid Scott the $100 because Scott requested it, but on cross examination acknowledged that the payment was for Scott's help in setting up the deal.

[2]Following this first arrest, Brown agreed to cooperate with investigators and was released from custody.  But he subsequently failed to appear for a scheduled court date and returned to crack dealing.

-3-

In due course, Brown was indicted and pleaded guilty to conspiring to possess crack with intent to distribute it. During his presentence interview and at the sentencing hearing, Brown admitted that he had made trips to New York to obtain crack and that he had developed a customer base of several purchasers in the Biddeford area. But he opposed the probation department's recommendation, subsequently adopted and pressed by the government, that he receive a managerial enhancement under U.S.S.G. § 3B1.1(c) (requiring a two-level upward adjustment to the base offense level of a defendant who "was an organizer, leader, manager, or supervisor in . . . criminal activity" of the type in which Brown engaged).[3] In opposing this recommendation, Brown took the position that those with whom he had conspired, and in particular Scott, were independent of Brown and not subject to his direction or control.

At the sentencing hearing, the district court rejected Brown's argument and found that he was a manager with respect to

---

[3]The Sentencing Guidelines recognize that larger criminal enterprises "tend to have clearly delineated divisions of responsibility." U.S.S.G. § 3B1.1, background comment. For this reason, as to criminal activity involving five or more participants or that was otherwise extensive, § 3B1.1(a) and (b) distinguish between organizers and leaders (who receive four-level enhancements) and managers and supervisors (who receive three-level enhancements).

As to smaller conspiracies, the Guidelines treat any distinctions among organization, leadership, management and supervision as having less significance. See id. Consequently, a conspirator who was higher in the hierarchy would receive the same two-level enhancement regardless of whether he was an organizer, leader, manager, or supervisor. § 3B1.1(c).

The district court treated the conspiracy to which Brown pleaded guilty as being governed by § 3B1.1(c). The government does not appeal this characterization.

Scott. In making this finding, the court observed that Brown's "control or supervision [of Scott] need not be explicit," and concluded that "the arrangements between" Brown and Scott supported a finding that Brown managed Scott. See United States v. Cruz, 120 F.3d 1, 4 (1st Cir. 1997) (en banc) ("a defendant's role in the offense can be proved wholly by circumstantial evidence"). Brown now asserts that this finding was unsupported by the evidence.[4]

The fact-specific finding Brown challenges is entitled to considerable deference and must stand unless clearly erroneous. E.g., id. at 3; United States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995). We will not find clear error unless "on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985) (citation and internal quotation marks omitted); See also United States v. Castillo, 287 F.3d 21, 25 (1st Cir. 2002). To demonstrate clear error in this case, Brown must convince us that the court was mistaken in finding that, on at least one occasion, Brown exercised authority or control over Scott or was otherwise responsible for organizing his activities. See, e.g., Cruz, 120 F.3d at 3; United States v. Voccola, 99 F.3d 37, 44 (1st Cir. 1996). Brown has not succeeded in this task.

Brown pleaded guilty to conspiring with others, including Scott, to possess crack with intent to distribute it. Drug

---

[4]Brown also contends that the district court's explanation for the enhancement was insufficiently detailed to permit meaningful appellate review. We disagree. The court's ruling, while terse, made clear that the court was anchoring the enhancement on circumstantial evidence that Brown managed Scott.

distribution conspiracies are frequently hierarchic, and our cases recognize that drug conspirators of higher rank commonly use subordinates as go-betweens to limit their own apparent involvement. See Cruz, 120 F.3d at 3-4 (citing cases); U.S.S.G. § 3B1.1, comment. n.4. Here, evidence before the district court supported a conclusion that the Brown-Scott relationship involved this familiar dynamic.

The facts permitted the following inferences. Scott, in the go-between role of steerer or finder, conducted the prefatory logistical communications with the undercover purchaser. Because Scott engaged in these preliminary discussions, Brown was able to limit his own apparent involvement until it was time for the transactions to be consummated. The deals were then completed in Scott's apartment, further enabling Brown to limit his own exposure.[5]

Other evidence presented to the sentencing judge also supported finding the existence of a criminal hierarchy. Although Scott made the smaller 2.5 gram crack sale to the undercover agent without Brown's direct involvement, Brown personally completed the sales of more substantial amounts. See United States v. Akitoye, 923 F.2d 221, 227 (1st Cir. 1991). At all times in the course of these two larger sales, Brown exercised exclusive dominion over the drugs. See id. And Brown retained the lion's share of the

---

[5]Along similar lines, Scott exposed himself to criminal sanctions by sheltering Brown as he attempted to flee and by denying to pursuing agents that Brown was in his apartment just prior to Brown's first arrest.

-6-

proceeds, while Scott received only small finder's fee payments for his lesser, albeit important, role in the transactions. See U.S.S.G. § 3B1.1, comment. n.4. From this evidence, the court could reasonably conclude that Brown exercised authority over Scott.

To be sure, Brown's characterization of his relationship with Scott as involving coequal independent contractors is not utterly contradicted by this evidence. Nor was the available evidence direct; as we have noted, the district court inferred Brown's managerial role from the circumstances. See supra at 4-5. But all of this is unavailing to the appellant, because the evidence need not have compelled the inference ultimately drawn. All that is required is that the court's choice among competing inferences be a plausible one. Cruz, 120 F.3d at 4 ("When competing inferences plausibly can be drawn from a set of facts, the fact finder's choice between them cannot be clearly erroneous.") (citation omitted).

As we have recounted, the district court had before it evidence that Brown supplied the drugs for the conspiracy that bore his alias; that he established a customer base; that Scott acted as a go-between or finder, with Brown personally involving himself in completing the larger sales; that Brown used Scott's apartment for transactions and as a safe-house; that he exercised dominion over virtually all of the known quantities of drugs; and that he kept the great majority of the proceeds. In view of this evidence, the

inference chosen by the court easily meets the plausibility standard.

Taking the evidence as a whole, we find no clear error in the court's role-in-the-offense determination.  See id.

**<u>Affirmed</u>**.