# United States Court of Appeals

## For the First Circuit

No. 02-1551
No. 02-2013

UNITED STATES OF AMERICA,

Appellee/Cross-Appellant,

v.

JOSÉ PICANSO, aka JOE,

Defendant, Appellant/Cross-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Edward F. Harrington, Senior U.S. District Judge]

Before

Boudin, Chief Judge,

Torruella and Howard, Circuit Judges.

Timothy G. Watkins, Federal Defender Office, for defendant.
    Michael J. Pelgro, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief for the
United States.

June 19, 2003

**BOUDIN, <u>Chief Judge</u>.**  José Picanso was convicted of four counts of distributing cocaine, one count of conspiracy to distribute, and two counts of aiding and abetting distribution. <u>See</u> 21 U.S.C. §§ 841, 846 (2000).  He now appeals his sentence, objecting to his designation as an organizer or leader.  U.S.S.G. § 3B1.1(a) (2002).  The government cross-appeals to contest the trial court's attribution to Picanso of a drug quantity less than that urged by the government.  Both claims of error are plausible but, by a close margin, we uphold the sentence against both attacks.

Picanso was indicted with seven co-defendants on trafficking charges in late 1999.  Trial began on July 17, 2000, and in view of the then-recent decision in <u>Apprendi</u> v. <u>New Jersey</u>, 530 U.S. 466 (2000), the district court approved the government's request to ask the jury to determine drug quantity.  On July 26, Picanso was convicted on the above-mentioned counts.  By special verdict, the jury found Picanso responsible for at least 500 grams but less than 5 kilograms of cocaine, making him liable under the statute to a minimum sentence of 5 years and a maximum sentence of 40 years.  21 U.S.C. § 841(b)(1)(B).

At the sentencing hearing, the government recommended that the court find Picanso responsible for 5 to 15 kilograms of cocaine, equating under the guidelines to a base offense level ("BOL") of 32.  U.S.S.G. § 2D1.1(c)(4).  It also sought a 4-level

increase under section 3B1.1(a) which provides, "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase [the offense level] by 4 levels."  Both positions were supported by the probation officer's pre-sentence report ("PSR").  The resulting total offense level ("TOL") of 36, coupled with Picanso's criminal history (category II), would have translated into a guideline sentencing range of 210-262 months.  U.S.S.G. Ch. 5, Pt. A (sentencing table).

Picanso opposed both the quantity and role-in-offense adjustments sought by the government.  As to the former, Picanso said that he was responsible for less than 5 kilos and he pointed to the jury's special verdict as implying its rejection of the government's position.  The district court first said, "You don't have to argue the jury verdict with me, I'm bound by it."  After further discussion, described more fully below, the district court retreated somewhat from this position but still found Picanso responsible for between 500 grams and 2 kilos, resulting in a BOL of 26.  U.S.S.G. § 2D1.1(c)(7).

However, the district court agreed with the government that the conspiracy involved five or more participants (a point now undisputed) and that Picanso qualified as an organizer or leader, warranting an upward adjustment of 4 levels.  The result was a TOL of 30 and guideline range of 108-135 months. U.S.S.G. Ch.5, Pt. A.

The district court then sentenced Picanso to 122 months of imprisonment. Picanso appealed to contest the factual basis for the 4-level role enhancement, and the government countered by cross-appealing from the district court's ruling that Picanso was liable for only 500 grams to 2 kilos of cocaine.

Role Enhancement. We begin with Picanso's appeal. To justify the role enhancement, the government carries the burden of proving, by a preponderance of the evidence, that the defendant was the "organizer or leader" of a criminal activity. United States v. Cruz, 120 F.3d 1, 4 (1st Cir. 1997) (en banc), cert. denied, 522 U.S. 1064 (1998). The guideline commentary states in pertinent part:

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment., n.4.

The underlying drug conspiracy involved Picanso and a number of other drug dealers operating out of two Portuguese-American social clubs in the Back Central area of Lowell, Massachusetts. Picanso's position is that he was one independent drug dealer among many; he supplied many of the drug dealers that sold to end users, but (he says) they were all free agents and he

-4-

exercised no control over them. The government seems to concede that Picanso was not a "leader" of a unified group of drug dealers, but argues nonetheless that he pulled the "organizational strings" by virtue of his control of the supply of cocaine. It relies among other decisions on United States v. Tejada-Beltran, 50 F.3d 105 (1st Cir. 1995):

> One may be classified as an organizer, though perhaps not as a leader, if he coordinates others so as to facilitate the commission of criminal activity. The key to determining whether a defendant qualifies as an organizer is not direct control but relative responsibility. . . . [T]he four level enhancement applies whether or not [the defendant] retains supervisory control over the other participants.

Id. at 112 (internal citations omitted).

In substance, Picanso was a wholesaler. Evidently he secured cocaine in bulk on trips to New York. According to the PSR, Picanso "acquired kilograms of cocaine from his sources and . . . broke down the kilograms into ounces and sold multiple ounces on a regular basis." After he distributed the drugs to retail dealers, they in turn would cut the cocaine and sell it to end users. Consistent with this description, it is also undisputed that Picanso was the "primary cocaine supplier" to these retail dealers.

The greater quantities in which a wholesaler deals and his larger profits cannot alone trigger the role enhancement, United States v. Fuller, 897 F.2d 1217, 1221 (1st Cir. 1990), and

the reason is plain. The base offense level already takes quantity (and, implicitly, profit) into account, id. at 1222; and if quantity alone were enough, every wholesaler in a significant conspiracy with retailers would be characterized as an organizer or leader. Here, the retail dealers were free to purchase from others, and did so before, during, and after Picanso's arrival on the scene. Nevertheless, under Tejada-Beltran, a wholesaler even without full-scale control of his retailers could still "coordinate[] others" so as to "facilitate" the criminal activity. 50 F.3d at 112.

The government points to several indicia to suggest a measure of control and coordination by Picanso. Several seem to us weak, at least in isolation. Yes, when other drug dealers called Picanso for a delivery, he would name a time and place for the transaction, but this de minimis planning is inherent in a criminal transaction involving more than one party. Nor does it distinguish Picanso from most sellers that as a formal matter he set the price and terms for his own sales. And, though some dealers regard Picanso as the "king," the guideline commentary provides that "titles such as 'kingpin' or 'boss' are not controlling," U.S.S.G. § 3B1.1, comment., n.4, although the commentary does not say that the perceptions of co-conspirators are automatically irrelevant.

More helpful to the government is the report by a confidential witness (contained in the PSR) that Picanso boasted

that he "would shut [a co-defendant] down for good if [the co-defendant] messed up again." The ability to regulate participation in the local drug trade is surely an indicium of power and control. This statement was not introduced at trial, and Picanso questions whether the sentencing judge actually relied on it, but sentencing decisions can rest on facts contained in the PSR and obvious evidence in the record supporting the district court's ultimate finding is sufficient. Cruz, 120 F.3d at 2; see also United States v. Medina, 167 F.3d 77, 80 (1st Cir. 1999) (no need for specific findings if evidence obvious).

There was also some evidence that Picanso on at least one occasion arranged for a transfer of drugs that involved Picanso as supplier, one of his retailers, and an acquaintance of the retailer. How far this showed Picanso to be orchestrating downstream transactions is a matter of inference; but inference drawing is part of fact-finding confided to the district court. To the extent that Picanso was effectively supervising the arrangements for a sale by the retailer for further distribution, it becomes easier to describe him as an organizer of something more than his own wholesaling. Cf. United States v. Brown, 298 F.3d 120, 123 (1st Cir.), cert. denied, 123 S. Ct. 710 (2002).

While the pillars may be individually weak, taken together they provide somewhat stronger support for the district court's ultimate finding. To summarize, Picanso supplied a

substantial network of retailers, set the terms for his own transactions with them, was regarded as the kingpin by other conspirators, and--drawing inferences in favor of the ultimate finding--had some influence over the operations of the retailers themselves. Probably this could be said of many wholesalers but not all.

There is no mathematical formula for drawing the line on one side of which one can be called an organizer. Although there must be a core of facts to support the label and not pure intuition, the issue also turns in some measure on an overall assessment of the defendant's role based on an assemblage of detail. The district court, having presided over the trial and heard the evidence first hand, said he had no doubt that Picanso was the organizer. The trial judge has the advantage over us as to both the raw facts and the "feel" of the situation. United States v. Rivera, 994 F.2d 942, 952 (1st Cir. 1993). Our review is only for clear error, United States v. Martinez-Medina, 279 F.3d 105, 123 (1st Cir.), cert. denied, 123 S. Ct. 311 (2002), and we do not find it here.

Drug Quantity. The PSR attributed to Picanso a series of specific small amounts of cocaine based on evidence as to his identified direct sales to retailers, his personal possession of a small amount on arrest, and other specific sales deemed to be relevant conduct as to Picanso. See U.S.S.G. § 1B1.3(a). These

added up to less than a kilo, but the probation officer in the PSR recommended that Picanso be held responsible for between 5 and 15 kilos based crudely (there was no calculation) on the length of his involvement and frequency of sales, and on a few recorded or reported statements of Picanso. For example, Picanso said on one occasion that he had just brought 5 kilos from New York.

In addition, at the sentencing hearing, the government offered an affidavit of the case agent from the Drug Enforcement Administration. Following a familiar technique, see United States v. Robinson, 241 F.3d 115, 117 n.1 (1st Cir.), cert. denied, 534 U.S. 856 (2001), the affidavit converted the amount of money seized from the home of Picanso's girlfriend ($639,000) into kilos of cocaine, basing the calculation on prices that Picanso was charging at the time of his sales and other such data. The affidavit concluded that the cash represented the proceeds from between 44 and 82 kilos of cocaine. This assumes, plausibly but not assuredly, that the money was Picanso's and that he had no other source of income.[1]

Against this background, the government on appeal objects to the district court's ruling attributing to Picanso only 500 grams to 2 kilos. Two arguments are offered: one is that the

---

[1]The money was seized from a safe in his girlfriend's house well after Picanso's arrest and, sensibly, he made no effort in the forfeiture proceeding to claim the money as his. Probably it was-- a document pertaining to Picanso was also in the safe--but there was no definitive proof of ownership or derivation.

district court deemed itself bound or was overly influenced by the jury's special verdict; the other is that--whatever the jury believed--the evidence compelled a finding by the district court that for guideline purposes Picanso was responsible for 5 to 15 kilos.  We address the arguments in this order.

As already recounted, the district court said, at the outset of argument on the amount issue, that it was "bound" by the jury verdict holding Picanso responsible for at least 500 grams but less than 5 kilograms.  This was true to the limited extent that under Apprendi, this finding fixed the maximum sentence permitted by the statute at 40 years; but it was false as to the proper determination of Picanso's guideline sentence which resolved (subject to the 40-year maximum) just how much time he would actually serve.  See Derman v. United States, 298 F.3d 34, 42-43 (1st Cir.), cert. denied, 123 S. Ct. 636 (2002).  The guideline range is driven, in drug cases, primarily by quantity (together with criminal history category).

A jury determination as to the quantity of drugs for which the defendant is responsible does not prevent the district court from finding a larger amount in the course of determining the guideline sentence.[2]  The reason is straightforward.  In making its

_____

[2]This is settled law in the circuits including this one.  See United States v. Caba, 241 F.3d 98, 101 (1st Cir. 2001); see also United States v. Titlbach, 300 F.3d 919, 922 (8th Cir. 2002), cert. denied, 123 S. Ct. 926 (2003); United States v. Smith, 308 F.3d 726, 744 (7th Cir. 2002); United States v. Dennis, 271 F.3d 71, 73-

own quantity determination for the purpose of determining the statutory maximum, the jury asks what quantity has been proved beyond a reasonable doubt. See Apprendi, 530 U.S. at 490. By contrast, in fixing the guideline sentence, the district court is supposed to ask whether the government has proven the pertinent amount by a preponderance of the evidence. See, e.g., United States v. Eirby, 262 F.3d 31, 36-37 (1st Cir. 2001). The judge could therefore quite rationally find an amount higher than was found by the jury. See United States v. Watts, 519 U.S. 148, 156 (1997) (per curiam).

Admittedly, this is lawyers' logic. Cf. Restatement (Second) of Judgments § 28(4) & comment f (1982); id. § 85, comment g. Many laymen, told that the jury's verdict was being ignored, would think that there was something wrong. Some might think this appearance problem is reason enough to change the law and--in the sensitive context of criminal sentencing--to respect the jury's finding despite the discrepancy in burdens of proof. But, as the law stands, the district judge is not only free to make his own independent finding but is essentially obliged to do so. Edwards v. United States, 523 U.S. 511, 514 (1998) (guidelines "require the judge to determine" nature and quantity of drugs involved "regardless of jury's actual, or assumed, beliefs"); cf. Watts, 519

74 (2d Cir. 2001) (per curiam) (jury special interrogatories). We recently reaffirmed this reading of Apprendi in United States v. Goodine, 326 F.3d 26, 27, 32-34 (1st Cir. 2003).

U.S. at 156 (sentence enhancement can be based on conduct acquitted by jury).

At the sentencing hearing, the district judge--although starting with the claim that he was "bound" by the jury's quantity determination--steadily backed away from that position under the force of the government's respectful argument. For example, when the district judge said he would create a legal issue if he departed from the jury's finding, the government explained that he would instead create one if he rested on that finding. In the end, the district court made a ruling that Picanso was responsible for 500 grams to 2 kilos, stating that he was "not bound, but inclined" to agree with the jury and that at least this ruling would be "in harmony" with the jury's verdict.

On appeal, the government argues that the district judge remained under the misapprehension that he either was bound by the jury's verdict or should at least give it substantial weight. If the former were true, this would clearly be legal error, United States v. Tavano, 12 F.3d 301, 307 (1st Cir. 1993), and arguably so in the latter case, too, notwithstanding the seemingly contrary view of the Sixth Circuit, United States v. Prior, 941 F.2d 427, 430-31 (1991). But our own judgment, after a careful review of the full and extensive colloquy, is that the district judge got the message even though he did not like it. We are also confident that a remand on this point would not change the ultimate result.

It is a different question whether the district court's own finding that Picanso was liable for 500 grams to 2 kilograms is clear error. The government says that--at least under a preponderance standard--the evidence virtually compelled a finding that Picanso was responsible for 5 to 15 kilos. Put differently, the government says that it was clear error for the district court not to accept the recommendation of the probation officer. The difference in quantity is important: given Picanso's organizer adjustment and criminal history category, the first amount implicates a guideline range of 108-135 months; the latter 210-262 months. U.S.S.G. § 2D1.1(c)(4), (7); id. Ch. 5, Pt. A.

There is certainly a very good argument for the higher range urged by the government--and Picanso took a serious risk if he provoked the cross-appeal--but the facts are peculiar. The district court's smaller figure corresponds to hard evidence of direct sales; the government's larger ones are based on the PSR's rough extrapolation based on Picanso's ongoing involvement in drug dealing; on reports of what Picanso said, possibly in boasts; and on the belief that the funds seized from the house of Picanso's girlfriend were his own drug proceeds. If we were making our own finding, the combined weight of this evidence might well persuade us.

Yet this time the "clearly erroneous" standard works in Picanso's favor. See United States v. Rivera-Maldonado, 194 F.3d

224, 228 n.2 (1st Cir. 1999) ("broad discretion" of district court); <u>Rivera</u>, 994 F.2d at 952. The appraisal of amount depends on inference drawing and perhaps credibility and we are not only loath but forbidden to substitute our own <u>de novo</u> assessment for that of the judge who tried the case and heard the evidence first hand. There were two close calls in this case--one as to role in the offense and the other as to amount. One went for the government and the other for Picanso. Someone has to have the last word on close calls as to the facts and it is right that it should be the district judge.

<u>Affirmed</u>.