**Not for publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

---

No. 02-2202

UNITED STATES,

Appellee,

v.

PEDRO ANGLON,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

---

Before

Torruella, Circuit Judge,
Cyr and Stahl, Senior Circuit Judges.

---

Thomas F. Connors, Jr. on brief for appellant.
Adi Goldstein, Assistant United States Attorney, Kenneth P. Madden, Assistant United States Attorney, Craig N. Moore, United States Attorney, on brief for appellee.

---

February 25, 2004

---

**Per Curiam**. Pedro Anglon appeals from a 135-month sentence imposed following his guilty plea to conspiring to distribute and to possess with intent to distribute the drug "ecstasy," and to distributing ecstasy on three occasions in August and September, 2001. On appeal, Anglon argues that the sentencing court erred in calculating the drug quantity attributable to him and in enhancing his base offense level for his supervisory role in the offense (and, consequently, denying him a "safety valve" reduction). As neither argument is availing, we affirm Anglon's sentence.

I. Drug Quantity

The sentencing court determined that the pre-sentence report ("PSR") had properly attributed the equivalent of 7,022.12 kilograms of marijuana to Anglon in calculating his base offense level ("BOL") of 34. That drug quantity was based upon: 1) the quantity of ecstasy pills sold in the transactions charged in Counts II - IV, to which Anglon pled guilty; 2) the quantity of ecstasy pills sold in the transactions charged in Counts V and VI of the indictment (which did not charge Anglon as a participant); 3) a small sample of heroin (.27 grams) delivered by co-defendant Félix R. Martínez on December 8, 2001; and 4) $7,000 in cash and cocaine, cocaine base and heroin seized in a search of Anglon's residence on December 10, 2001. The cocaine base alone accounted for 6,746 kilograms of the total drug quantity, determining

-2-

Anglon's BOL of 34 (corresponding with at least 3,000 but not more than 10,000 kilograms of marijuana).

Anglon argues that the district court erred in including as "relevant conduct" the second, third and fourth categories listed above in calculating drug quantity. Because we conclude that the district court did not err in including the fourth category as relevant conduct, and the exclusion of the drug quantities in categories 2 and 3 would not impact Anglon's BOL or sentence, we need not consider Anglon's challenge to categories 2) and 3). See United States v. Young, 78 F.3d 758, 763 n.4 (1st Cir. 1996)(noting that it was unnecessary to consider whether a certain drug was properly included because its exclusion from the total drug quantity would not change appellant's base offense level or sentencing range).

> Under the United States Sentencing Guidelines, a court is to consider all relevant conduct in determining the quantity of drugs for which a defendant is responsible. U.S.S.G. § 1B1.3. A preponderance of the evidence standard applies to the determination of drug quantity, and a sentencing court's drug quantity determination is a factual matter that will not be disturbed on appeal unless it is clearly erroneous.

United States v. May, 343 F.3d 1, 6 (1st Cir. 2003) (citations omitted).

Anglon's PSR reported that a search of his apartment and the basement to his apartment building on December 10, 2001, resulted in the seizure of $7,000 in cash from Anglon's apartment

-3-

and quantities of cocaine, cocaine base and heroin from the basement.  Anglon argues on appeal, as he did in his objections to the PSR, that the cash and drugs seized should not have been included as relevant conduct because there was insufficient evidence connecting them to him.  He also argues that there was an insufficient nexus to the charged conduct because the drugs seized were different in type from the drug Anglon was charged with distributing (ecstasy).

> Under the Sentencing Guidelines, 'relevant conduct' includes all acts 'that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]' U.S.S.G. § 1B1.3.  For two or more offenses to be considered part of a common scheme or plan, 'they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*.' U.S.S.G. § 1B1.3, comment. (n.9(A)).

Young, 78 F.3d at 763.  A sentencing court's determination that an offense forms part of the same course of conduct or common scheme or plan "is a predominantly factual finding that will be disturbed only if clearly erroneous."  United States v. Garcia, 954 F.2d 12, 16 (1st Cir. 1992).

After hearing testimony from Anglon and his wife that they had only limited access to the basement where the drugs were found, and contrary testimony by a police detective who executed the search, the sentencing court concluded that Anglon's and his wife's testimony was not credible.  "It is settled beyond cavil

that, in the sentencing phase of a criminal case, credibility choices are within the exclusive province of the district judge." United States v. Conley, 156 F.3d 78, 85 (1st Cir. 1998). Similarly, the sentencing court implicitly found that Anglon's claim that he did not know the origins of the $7,000 in cash seized from his apartment, but that it was not drug money, was not credible.

The fact that the drugs seized from Anglon's residence were of different types (cocaine, cocaine base and heroin) than the drug involved in the charged offense (ecstasy) is not determinative. See May, 343 F.3d at 7; Young, 78 F.3d at 763. The PSR reported that Martínez delivered the sample of heroin to Agent Cruz on December 8, 2001, immediately after paying a visit to Anglon's residence. It also indicated that during the August 15, 2001 and September 18, 2001 transactions, Anglon made references to dealing cocaine and heroin in his conversations with Agent Cruz. Finally, the PSR stated that during the search of 8 Mawney Street on December 10, 2001, a scale, sifter and grinder, containing heroin residue, were seized from inside Anglon's apartment. In light of this evidence, to which Anglon made no objection, the inclusion (as relevant conduct) of the drugs and cash seized from Anglon's address was not clearly erroneous.

II. Role in the Offense and Safety Valve

The district court increased Anglon's base offense level

-5-

by two levels, pursuant to U.S.S.G. § 3B1.1(c), for his role as "an organizer, leader, manager or supervisor in any criminal activity" involving one-to-three other participants.  A two-level increase under § 3B1.1(c) is justified

> if the sentencing court supportably finds that (1) the criminal enterprise involved at least two complicit participants (of whom the defendant may be counted as one), and (2) the defendant, in committing the offense, exercised control over, organized, or was otherwise responsible for superintending the activities of, at least one of those persons.

United States v. Cruz, 120 F.3d 1, 3 (1st Cir. 1997).  The government bears the burden of proving by a preponderance of the evidence that the defendant qualifies for such an adjustment. See id.  The evidence supporting the role in the offense determination may be wholly circumstantial. See id. at 4.  The government need only prove that the defendant exercised authority or control over another participant on one occasion. See id.; United States v. Brown, 298 F.3d 120, 122 (1st Cir. 2002), cert. denied, 537 U.S. 1096 (2002).  We review such a determination for clear error. See Brown, 298 F.3d at 122.

In his testimony at the sentencing hearing, Anglon stated that he never had anyone "working for [him], delivering or receiving drugs other than the co-defendants in this case."  He testified that he used to have Martínez make deliveries from him so that Anglon would not have drugs on his person.  Anglon admitted to having "arranged" the August 15, 2001 transaction and that he "had

-6-

Mr. Paulino deliver ecstasy pills to Agent Cruz." He specified that he had told co-defendant Juan Paulino to bring the ecstasy pills to the restaurant and, after the pills were delivered and paid for, had told Paulino to bring the money to Anglon's apartment. Anglon denied that he was the boss of anyone and maintained that he and Martínez and Paulino were equal partners, sharing the profits from the drug sales equally. On the basis of this evidence, the district court's conclusion that the government had proved by a preponderance of the evidence that Anglon had exercised authority or control over another participant on at least one occasion, was not clearly erroneous. That competing reasonable inferences might be drawn from Anglon's testimony did not make the sentencing court's choice between them clearly erroneous. See Cruz, 120 F.3d at 4.

The district court did not err in determining that Anglon did not qualify for a two-level reduction under the "safety valve" provision. See U.S.S.G. §§ 2D1.1(b)(6), 5C1.2(a). Such a reduction is permitted only if "the defendant was not an organizer, leader, manager, or supervisor of others in the offense." § 5C1.2(a)(4).

Affirmed. See 1st Cir. R. 27(c).