# United States Court of Appeals
## For the First Circuit

---

No. 02-2396

UNITED STATES OF AMERICA,

Appellee,

v.

SHAWN MONTEIRO, a/k/a Shiz, a/k/a Sean Thomas,
a/k/a John Grant,

Defendant, Appellant.

---

No. 02-2397

UNITED STATES OF AMERICA,

Appellee,

v.

WILLIAM JOHNSON,

Defendant, Appellant.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

---

Before

Torruella, Lipez, and Howard, Circuit Judges.

---

George H. Murphy, was on brief for appellant, Shawn Monteiro.

Jay Markell, was on brief for appellant, William Johnson.

Cynthia A. Young, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for appellee.

---

August 9, 2005

---

**HOWARD**, **Circuit Judge**. William Johnson and Shawn Monteiro pleaded guilty to charges stemming from their participation in drug distribution and money laundering conspiracies. Johnson received a 97-month sentence, and Monteiro received a 70-month sentence. Both defendants appeal their sentences. We affirm.

## I.

The facts are derived from the plea and sentencing hearings and the presentence reports. See United States v. Tejada-Beltran, 50 F.3d 105, 107 (1st Cir. 1995). In the late 1990s, the defendants, who were old friends, cooperated in extensive drug distribution and money laundering conspiracies. The drug conspiracy involved arranging for shipments of marijuana from California to Massachusetts and Rhode Island, where it could be divided and sold to individuals for profit.

Johnson engaged Andre Turner, an acquaintance of his to whom he introduced Monteiro as a "drug associate[]," to ship the drugs from California. Turner sent the marijuana to locations in Massachusetts and Rhode Island identified by Johnson, where it usually was retrieved by Robert Bukin, one of the defendants' associates (though occasionally the defendants retrieved the drugs themselves). After the marijuana arrived, the defendants and others divided it and distributed it to local customers.

The defendants earned substantial cash sums from their drug enterprise and devised a scheme to launder the money by wiring it through Western Union. Johnson personally made 29 wire transfers and received many others from conspiracy members. He also recruited other individuals, including Christopher Spaulding and Johnson's cousin, Charles Vaughn to make transfers on his behalf. Monteiro engaged in similar conduct. He personally wired over $10,000 to people in California. He also recruited Courtney Wooten, Leah Texeira Baez, Ana Monteiro, and Lori Pierce to wire money for him. There was evidence that approximately $1.8 million was wired through Western Union during the course of the conspiracy.

On these facts, Johnson pleaded guilty to conspiring to possess marijuana with the intent to distribute, 21 U.S.C. § 846, conspiring to launder money, 18 U.S.C. § 1956(h), and possessing marijuana with the intent to distribute, 21 U.S.C. § 841(a)(1). Monteiro pleaded guilty to conspiring to possess marijuana with the intent to distribute, 21 U.S.C. § 846, and conspiring to launder money, 18 U.S.C. § 1956(h).

At the sentencing hearing, the district court heard from Drug Enforcement Administration Agent John O'Donoghue, who was assigned to investigate the defendants' activities. He testified to several statements made to him during the course of his investigation that implicated the defendants and demonstrated that

-4-

they were working together as part of a single conspiracy to distribute drugs and to launder the cash generated by their illicit enterprise.

After O'Donoghue's testimony, the district court announced its sentencing calculation for each defendant. Concerning Johnson, the court based the sentence on the money laundering conviction because it yielded the highest offense level under the Sentencing Guidelines. See U.S.S.G. § 3D1.2 (2001). The base offense level for money laundering conducted in connection with drug offenses is defined as the base offense level for the underlying drug offenses. See U.S.S.G. § 2S1.1(a)(1). The base offense level for Johnson's drug offenses was 26. The court added two levels because Johnson was convicted of money laundering under 18 U.S.C. § 1956, see U.S.S.G. § 2S1.1(b)(2)(B), and four more levels because Johnson led or organized a money laundering conspiracy which included at least five people, see U.S.S.G. § 3B1.1(a).[1] The court then subtracted three levels because Johnson accepted responsibility, see U.S.S.G. § 3E1.1. Johnson's total offense level was 29 which, because of his category II criminal history, yielded a sentencing range between 97 and 121 months. Johnson moved for a downward departure based on his poor health and

---

[1]In applying the enhancement, the court acknowledged that there was some "degree of decentralization," but concluded that there was credible evidence of "an overarching agreement" among five or more people to recruit others to launder money through wire transfers.

presentence rehabilitation.  The court denied the motions and sentenced Johnson to 97 months in prison.

The court conducted a similar calculation for Monteiro. His sentence was also based on the money laundering conviction. Because the court attributed smaller amounts of marijuana to Monteiro than to Johnson, the base offense level was 24.  The court then applied the same adjustments made to Johnson's offense level to arrive at a total offense level of 27.  Because Monteiro had a category I criminal history, the sentencing range was 70 to 87 months' imprisonment.  The court sentenced Monteiro to 70 months in prison.

## II.

The defendants' primary contention is that the district court erred in applying the four-level role-in-the-offense enhancement.  They also argue that they are entitled to resentencing under United States v. Booker, 125 S. Ct. 738 (2005). Additionally, Johnson challenges the district court's denial of his motions for a downward departure.

### A.    Role-in-the-Offense Enhancement

The defendants challenge the application of the role-in-the-offense enhancement on two grounds.  First, they argue that the evidence was insufficient for the court to conclude that there was an overarching conspiracy to launder money involving five or more people.  At most, they contend, the evidence showed that Monteiro

and Johnson each led his own separate conspiracy, neither of which contained the five-person minimum.  Second, they argue that, to the extent there was evidence of a single conspiracy, it came from the hearsay testimony of the agent who investigated the crime and therefore was unreliable.

The enhancement applies where the government demonstrates, by a preponderance of the evidence, that "the defendant was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a); United States v. Cruz, 120 F.3d 1, 3 (1st Cir. 1997) (en banc).  The determination that a given set of facts justifies application of the enhancement is "entitled to considerable deference and must stand unless clearly erroneous." United States v. Brown, 298 F.3d 120, 122 (1st Cir. 2002).  Thus, the battle over the enhancement "will almost always be won or lost in the district court."  United States v. Santos, 357 F.3d 136, 142 (1st Cir. 2004).  Whether a set of crimes can be attributed to one conspiracy is a question of fact, see United States v. Glaum, 356 F.3d 169, 176 (1st Cir. 2004), vacated on other grounds by 125 S. Ct. 1030 (2005), the resolution of which typically depends on evidence of common purpose, interdependence among the elements of the plan, and overlap among the participants, see United States v. Portela, 167 F.3d 687, 695 (1st Cir. 1999).  But these factors serve only as a guide; "[n]o magic formula exists for determining

when a set of jointly committed crimes adds up to an overarching conspiracy or enterprise." United States v. Shea, 211 F.3d 659, 665 (1st Cir. 2000).

The court heard testimony that the defendants were partners in a drug distribution ring, including testimony that Johnson introduced Monteiro as his "drug associate[]." The ring generated significant sums of cash which provided the defendants with a common motive to launder money. There also was substantial testimonial and documentary proof of overlap among conspiracy participants. Andre Turner not only received Western Union wires from Johnson, but also from Wooten and Baez (who were recruited by Monteiro). Spaulding was introduced to both Monteiro and Johnson and proceeded to wire approximately $75,000 on their behalf. And the record is replete with evidence of individuals recruited by each defendant wiring money to common recipients. The court was justified in concluding that this overlap in method and participants was not a coincidence, but rather evidence of an agreement between the defendants to launder the money that they obtained from their drug conspiracy.

The challenge to the reliability of Agent O'Donoghue's testimony fares no better. The defendants claim that the district court could not rely on the agent's testimony because the government did not produce the declarants whose statements O'Donoghue relayed. But there is no obligation on the part of the

government to produce the declarants so long as the court has a basis for measuring the reliability of the testifying officer. See, e.g., United States v. Phaneuf, 91 F.3d 255, 261-62 (1st Cir. 1996); United States v. Rojo-Alvarez, 944 F.2d 959, 971 (1st Cir. 1991).

The record demonstrates such a basis. Agent O'Donoghue's testimony was consistent with information in the presentence reports, which included summaries of interviews with the declarants. The district court also had before it documentary evidence, in the form of a summary of Western Union receipts, which showed the defendants and their associates wiring money to many of the same recipients. See Phaneuf, 91 F.3d at 261-62 (stating that reliability of hearsay at sentencing can be demonstrated by reference to other evidence in the case). Furthermore, the court did not adopt the agent's testimony wholesale; it declined to credit the statements of witnesses who may have had reason to depict the defendants in an unflattering light.[2]

_____

[2]Monteiro also argues that the district court's application of the role-in-the-offense enhancement was clearly wrong because the court's finding of a single conspiracy conflicted with its decision not to attribute to him all of the money laundered by the conspiracy. According to Monteiro, this shows that there was not a single money laundering conspiracy. We disagree. The court used the amount of money laundered in the conspiracy as a factor in estimating drug quantity. The district court indicated that it relied on a reduced amount of money laundered through the conspiracy to arrive at a conservative drug quantity estimate. See United States v. Marks, 365 F.3d 101, 105 (1st Cir. 2004) (stating that in choosing between plausible estimates of drug quantity district courts are "to err on the side of caution"). It

**B.      Downward Departure**

Johnson contends that the district court erroneously concluded that it did not have the legal authority to depart downward based on his poor health and his presentence rehabilitation.  The government counters that the court understood that it could depart on both of these grounds, but that it declined to do so as a matter of discretion.  Therefore, the government argues we do not have jurisdiction to review Johnson's claims.

Although a district court's discretionary denial of a departure is not appealable, see United States v. Dewire, 271 F.3d 333, 337 (1st Cir. 2001), a refusal to depart based on a misunderstanding of the law is reviewed de novo, see United States v. Romolo, 937 F.2d 20, 22 (1st Cir. 1991).  The line between discretionary and legal denials of downward departure requests has not always been clear.  See United States v. Saldana, 109 F.3d 100,

---

simply does not follow that the court's conservative drug quantity estimate (which benefitted Monteiro) necessarily precluded the court from finding a single conspiracy.

In addition, Monteiro contends that the court violated his due process rights by applying the role-in-the-offense enhancement to the money laundering conviction instead of the drug conviction.  He claims prejudice because applying the enhancement to the drug conviction would have resulted in a lower total offense level. There is no merit to this argument. The district court must separately evaluate the defendant's leadership role for each count. See United States v. Thiongo, 344 F.3d 55, 62 n.5 (1st Cir. 2003). As set forth above, the court's determination that Monteiro was an organizer or leader of the money laundering conspiracy was based on reliable evidence, and therefore it was appropriate for the court to apply the enhancement.

103 (1st Cir. 1997).  We explained the distinction in <u>United States</u> v. <u>Pierro</u>:

> If the judge sets differential factfinding and evaluative judgment to one side, and says, in effect, "the circumstance of which you speak, <u>even if it exists</u>, does not constitute a legally sufficient basis for departure," then the correctness of that quintessentially <u>legal</u> determination may be tested on appeal.  But if the judge says, in effect, either that "this circumstance of which you speak has not been shown to exist in this case" or, alternatively that "while this circumstance of which you speak might exist and might constitute a legally cognizable basis for a departure in a theoretical sense, it does not render this particular case sufficiently unusual to warrant departing," then, in either such event, no appeal lies.

32 F.3d 611, 619 (1st Cir. 1994).

Under this standard, the government's jurisdictional arguments achieve mixed results.  With regard to the requested poor health departure, the court reasoned that Johnson would receive adequate health care in prison; it did not evince an understanding that it was legally constrained from granting a health-related departure.  This, then, was a discretionary decision which we will not review.  <u>See</u> <u>United States</u> v. <u>Teeter</u>, 257 F.3d 14, 30 (1st Cir. 2001).

The requested presentence rehabilitation departure presents a different situation.  The district court ruled that the "degree of discretion" afforded by the caselaw did not extend to the circumstances of this case.  This is a legal ruling infected,

Johnson contends, by the court's misunderstanding of the amount of discretion it possessed.  We review this claim de novo.

Johnson presented the court with information that, after he learned about the investigation into his criminal conduct, "he began . . . to earn a living through honest hard work as a carpenter."  He also began to address his substance abuse problem by agreeing to remain in custody where he could participate in a drug rehabilitation program pending the resolution of the criminal charges.

The district court accurately perceived the narrow parameters within which it was empowered to grant a downward departure for presentence rehabilitation.  See United States v. Craven, 239 F.3d 91, 99 (1st Cir. 2001) (stating that "downward departures for presentence rehabilitation are hen's-teeth rare"). In United States v. Rushby, 936 F.2d 41, 42-43 (1991), we concluded that a defendant was not entitled to a downward departure for presentence rehabilitation based on proof that the defendant had enrolled in a substance abuse treatment program, was attending to his family responsibilities, and was holding gainful employment. Similarly, in United States v. Sklar, 920 F.2d 107, 114 (1st Cir. 1990), we set aside a downward departure grounded on presentence rehabilitation where the defendant entered a halfway house, remained substance-free, and found employment.  The court was correct in concluding that these cases precluded a downward

-12-

departure based on Johnson's procuring employment and beginning a drug treatment program.

### C. **Booker** Claim

Finally, we consider the defendants' claim that they were entitled to resentencing under <u>Booker</u>. See <u>Booker</u>, 125 S. Ct. 738 (declaring the Guidelines advisory in preserving their constitutionality). The defendants essentially recast their argument concerning the role-in-the-offense enhancement as a <u>Booker</u> claim. They argue that the district court's imposition of the role-in-the-offense enhancement was dubious because it was based on hearsay.

To support this argument, the defendants invoke <u>Crawford</u> v. <u>Washington</u>, 541 U.S. 36 (2004) (holding that certain types of hearsay are not admissible at a criminal trial under the Confrontation Clause). They suggest that the logic of <u>Crawford</u> (which was decided after the district court imposed sentence) may encourage the court to rely less heavily on hearsay if given an opportunity to resentence. The defendants did not raise a <u>Booker</u> argument below, so our review is for plain error.[3] See <u>United States</u> v. <u>Antonakopoulos</u>, 399 F.3d 68, 76-77 (1st Cir. 2005).

---

[3]The defendants argue that they had no obligation to object below to preserve their <u>Booker</u> claim because their claim "involve[s] a constitutional principle that had not been previously recognized." We already have rejected this argument. See <u>Antonakopoulos</u>, 399 F.3d at 76.

-13-

A prerequisite for this court to order resentencing based on an unpreserved Booker claim is a demonstration by the defendant that there is a "reasonable probability" that the district court would impose a more favorable sentence under the now advisory Guidelines. Id. at 75. We are not "overly demanding as to proof of [such] probability where, either in the existing record or by plausible proffer, there is reasonable indication that the [court] might well have reached a different result under advisory guidelines." United States v. Heldeman, 402 F.3d 220, 224 (1st Cir. 2005).

The defendants have not satisfied this burden. Crawford does not apply to sentencing, see United States v. Luciano, --F.3d--, 2005 WL 1594576, at *4-*5 (1st Cir. July 8, 2005), and there is nothing (but the defendants' assertions) to suggest that Crawford's rationale would have any impact on the sentences imposed in this case. Besides Crawford, the defendants have not identified anything in the record from which we can conclude that the court shared the defendants' doubt about the appropriateness of the role-in-the-offense enhancement simply because the evidentiary basis for the enhancement was comprised of hearsay. We therefore have no basis for ordering a remand.

**III.**

For the reasons stated, the defendants' sentences are **affirmed**.

-14-