# United States Court of Appeals
## For the First Circuit

No. 14-1674

UNITED STATES OF AMERICA,

Appellee,

v.

JOSEPH MARTINEZ-ARMESTICA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Lynch, Selya, and Lipez,
Circuit Judges.

John E. Mudd, with whom Law Offices of John E. Mudd were on brief, for appellant.
Susan Jorgensen, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Jose Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

January 20, 2017

**LIPEZ**, <u>Circuit Judge</u>.   Joseph Martinez-Armestica ("Martinez") was charged with two counts of carjacking, one count of using, carrying, and brandishing a firearm during a crime of violence, and four counts of illegal possession of firearms seen in photographs on Martinez's cell phone.  He pled guilty to the carjacking counts and not guilty to the others.  After a three-day jury trial, Martinez was convicted on all five remaining counts and sentenced to 180 months in prison.  He appeals his convictions and sentence, arguing that there was insufficient evidence for the jury to find that he brandished a real gun during the carjacking, that the trial judge erred in admitting testimony from the government's firearms expert related to the illegal possession counts, and that his sentence was unreasonable.[1]  Following a careful review of his claims, we affirm.

---

[1] Martinez also submitted a pro se letter, purportedly pursuant to Federal Rule of Appellate Procedure 28(j), arguing, based upon <u>Johnson</u> v. <u>United States</u>, 135 S. Ct. 2551 (2015) and <u>Welch</u> v. <u>United States</u>, 136 S. Ct. 1257 (2016), that his carjacking conviction is not a crime of violence under 18 U.S.C. § 924(c)(3). Because this is a new argument, rather than a citation of supplemental authorities, it is not properly raised through a Rule 28(j) letter.  Moreover, <u>Welch</u> did not answer any question currently applicable to this case, and <u>Johnson</u> had already been decided when appellant submitted his opening brief. Consequently, Martinez has waived this argument by not raising it in a timely manner. <u>See</u> <u>Young</u> v. <u>Wells Fargo Bank, N.A.</u>, 828 F.3d 26, 32 (1st Cir. 2016).

Because Martinez challenges the sufficiency of the evidence against him on the brandishing count, we state the facts in the light most favorable to the jury's verdict. United States v. Cruz-Rodriguez, 541 F.3d 19, 25 (1st Cir. 2008).

On September 25, 2012, at approximately 10:15 p.m., Zuleyka Arroyo-Melendez ("Arroyo") drove her 22-year-old niece, Stephanie Ramirez, to the Martinez Nadal train station in Puerto Rico. Ramirez had left her own SUV in the train station parking lot earlier in the day and had asked her aunt to drive her there after work so she could pick it up. Arroyo parked next to her niece's SUV, and Ramirez switched cars. Ramirez had turned her car on and was preparing to back out of her parking space when a white Toyota pulled up in the parking lot behind the two women. Two men, aged between 19 and 23 years old, also appeared behind them. One of the men, later identified as Martinez, approached Ramirez's SUV holding what the women described as a small, black pistol. He yelled at Ramirez to get out of her car and held the pistol to her head. Ramirez complied. Martinez got into Ramirez's SUV and, after heeding her pleas to throw her bag of college books to her, drove away.

Meanwhile, the second man approached Arroyo and stood approximately two feet away from her, pointing at her what was described as a second black pistol. After Martinez left, the

- 3 -

second man got into Arroyo's SUV but, finding himself unable to turn off the emergency brake, called Arroyo over to the car. Pushing the muzzle of his pistol against her abdomen, he demanded that she lower the emergency brake handle. Arroyo later described the pistol as feeling hard and "a bit cold." She complied, but pleaded with him not to take the car and leave her stranded in the parking lot with her niece. He responded by saying that he needed the car, but he agreed to give Arroyo her house keys. He then drove away in Arroyo's SUV.

Arroyo later recognized Martinez and his accomplice in a photo she saw posted on Facebook and identified the two men to the police. When Martinez was taken into custody the police seized a cell phone from him, which was later found to contain at least four photos of Martinez with guns.

In July 2013, a grand jury returned a superseding indictment charging Martinez with two counts of carjacking and one count of brandishing a firearm during and in relation to a crime of violence. Martinez was also indicted on four counts of unlawful possession of a firearm by a convicted felon based on the photos discovered on his phone. As noted, he pled guilty to the two counts of carjacking but elected to go to trial on the other five counts. He was found guilty on all counts.

Martinez was subsequently sentenced to 71 months for each of the carjacking and illegal possession offenses, to be

- 4 -

served concurrently.  The district court also imposed a consecutive sentence of 109 months for brandishing a firearm during a crime of violence, which included a 25-month variance over the Guidelines-recommended sentence.  This appeal followed.

## II.

### A. Sufficiency of the Evidence for Brandishing a Firearm During a Crime of Violence

Martinez argues that the evidence presented at trial was insufficient for the jury to find that he brandished a firearm during the carjacking.  A conviction under 18 U.S.C. § 924(c) requires proof that the defendant wielded a "firearm," which is defined as

> (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921(a)(3).  The firearm must be "real," rather than a toy or replica, but it "need not be prove[d] to be loaded or operable."  United States v. Taylor, 54 F.3d 967, 975 (1st Cir. 1995) (quoting United States v. Kirvan, 997 F.2d 963, 966 (1st Cir. 1993)).

Martinez contends that the government failed to establish that the object in his hand was a real gun.  Sufficiency of the evidence claims are reviewed de novo when, as here, they

have been preserved for appeal. United States v. De León-Quiñones, 588 F.3d 748, 751 (1st Cir. 2009). We give deference to the jury's determination, however, viewing the evidence in the light most favorable to the government and asking "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Roberson, 459 F.3d 39, 47 (1st Cir. 2006) (quoting United States v. Bailey, 405 F.3d 102, 111 (1st Cir. 2005)).

At trial, both Arroyo and Ramirez testified about Martinez's use of a gun during the carjacking. Martinez argues that because neither woman actually stated that the gun was real, their testimony about the gun was not specific enough to support a jury finding to that effect. He also attempts to cast doubt on their ability to adequately see the object in his hand, asserting that the parking lot was not well lit and that Ramirez could see only part of the gun.

Martinez's attempt to discredit the evidence before the jury is unavailing. Both women described the object as a "black pistol." Arroyo also testified that she knew the difference between a pistol and a revolver, permitting the jury to infer that she had some familiarity with firearms.[2] Neither woman referred

---

[2] As explained in greater detail by Agent Douglas J. Halepaska, Jr., a firearms and tool marks examiner called at trial as a witness by the government, both pistols and revolvers are handguns. A revolver has a cylinder containing a number of

to the gun in Martinez's hand in any way that would indicate that it was not real. See United States v. Cruz-Diaz, 550 F.3d 169, 173 (1st Cir. 2008) (finding that the totality of evidence, including the lack of an indication in the witness testimony that the "pistol" described by the witnesses was fake, supported an inference by the jury that the defendant used a real gun). Moreover, the two witnesses' reactions to the gun provide further circumstantial evidence that they believed it to be real: both women gave up their cars and keys in response to the threats of Martinez and his accomplice, and Arroyo testified that she thought Martinez was going to kill her niece. See De León-Quiñones, 588 F.3d at 752 (finding sufficient evidence for a § 924(c) conviction based, in part, upon evidence of the victims' reaction indicating that they believed the defendant's gun was real).

Nor is there any reason to doubt the witnesses' testimony that they could see the gun. Both Arroyo and Ramirez pointed out that the parking lot was lit, and Arroyo noted that she had parked her SUV directly next to a lamp post. Ramirez also testified that she could see clearly during the episode. Moreover, Arroyo, who observed the gun from only 2 to 3 feet away while Martinez pointed

_____

separate chambers that rotate around a central axis. When a unit of ammunition is discharged, it moves from one of those chambers into the barrel of the gun. In a pistol, by contrast, the chamber and the barrel are integrated as one unit.

it at her niece, testified that she was paying close attention because "I thought he was going to kill her."

Martinez also attempts a more general challenge to Arroyo and Ramirez's testimony, arguing that the testimony of a lay witness who lacks experience with guns is categorically insufficient to prove that an object is a real gun. Instead, he argues, the testimony of an expert witness is required, or, as in Roberson, at least the testimony of a witness who handled the object at issue and has some familiarity with firearms. See 459 F.3d at 47. Along with other circuits, we have squarely rejected the argument that such expert testimony is necessary. See Taylor, 54 F.3d at 975 ("lay opinion testimony may be employed to propel a finding that an object is in fact a real gun"); see also, e.g., United States v. Lawson, 810 F.3d 1032, 1040 (7th Cir. 2016); United States v. Stenger, 605 F.3d 492, 504 (8th Cir. 2010). Furthermore, a witness need not be familiar with firearms, nor have held the weapon to testify that it was real. See United States v. Jones, 16 F.3d 487, 490-91 (2d Cir. 1994) (finding testimony of eyewitnesses who were "not familiar with weapons" sufficient to sustain conviction under § 924(c)); Parker v. United States, 801 F.2d 1382, 1383-85 (D.C. Cir. 1986) (rejecting the contention that eyewitness testimony will not suffice to establish that an object is a gun unless "it [was] given by persons

knowledgeable about firearms who had an opportunity to examine the weapon closely").

Martinez argues that these precedents should be reevaluated in light of the 2000 amendments to Rule 701 of the Federal Rules of Evidence, which he claims were intended to "mak[e] it much more difficult for laypersons to testify as to issues better left for experts." That argument, which was limited to one sentence of appellant's brief, was raised in such a perfunctory manner that we deem it waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. . . . '[A] litigant has an obligation "to spell out its arguments squarely and distinctly," or else forever hold its peace.'" (quoting Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988))). Even so, this circuit's post-2000 decisions clearly reaffirm that the testimony of a person with specialized knowledge is not required to sustain a jury finding that a gun was real. See, e.g., Cruz-Diaz, 550 F.3d at 173 (affirming conviction based on the testimony of four bank employees, none of whom held the gun or had specialized expertise); De León-Quiñones, 588 F.3d at 752 (affirming conviction based on the testimony of three bank employees, none of whom held the gun or had specialized expertise).

We therefore reject Martinez's contention that the evidence was insufficient to support his conviction for brandishing a firearm during a crime of violence.

**B. Admission of Expert Testimony**

At trial the government called Agent Douglas J. Halepaska, Jr., a firearms and tool marks examiner for the laboratory division of the Federal Bureau of Investigation ("FBI"), to testify in support of the charges of illegal possession of a firearm. Halepaska analyzed photos found on Martinez's phone showing Martinez in possession of guns, which served as the basis for the illegal possession charges.

The government presented Halepaska's conclusions as expert testimony. Pursuant to Federal Rule of Evidence 702, Halepaska first testified about his qualifications and methods. He described in detail the "lengthy and extensive training program" he had undergone at the FBI before being certified as a firearms and tool mark examiner. He then explained the various kinds of forensic analyses he performs on firearms evidence. For photographs such as those on Martinez's phone, he performs an "association examination," or more specifically a "photograph analysis," in which he examines specific physical characteristics of the gun in a photo and determines which manufacturers and models of guns are consistent with those features. After making an initial assessment, he obtains firearms from the FBI's collection

of over 7,000 reference firearms to compare directly with the photos. He then creates an illustration that mimics the photo by placing the reference firearm in a similar position to that of the unknown gun. This positioning allows him to make a direct comparison of features so that he can narrow the subset of potential firearms that are consistent with the pictured gun.

Upon questioning by defense counsel, Halepaska admitted that his examination in this case was only the third association analysis he had conducted since being certified, and that this was the first time he had testified in court about an association examination. At that point defense counsel objected to his qualification as an expert. The judge overruled the objection and declared Halepaska an expert in determining whether an object in a photograph is consistent with a specific brand or model of gun.

Halepaska then testified that he had conducted a "photograph analysis" of three of the photos found on Martinez's phone, each of which featured Martinez with an object that appeared to be a gun.[3] Halepaska concluded that the item in each of the three photos was consistent with a pistol manufactured by Glock. On cross examination, however, he admitted that he could not determine whether the guns in the photos were functional firearms,

---

[3] Halepaska's analysis addressed only the photos dated June 17, 2012, June 22, 2012 and August 26, 2012. The fourth photo, dated September 24, 2012, was not provided to him and he did not testify about its contents.

replica firearms, or toy firearms.  He explained that, in order to determine whether a gun was real, he would need to examine it in person.

Martinez claims that Halepaska's testimony failed to meet the requirements of Federal Rule of Evidence 702.  That rule "imposes a gate-keeping role on the trial judge to ensure that an expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand.'"  United States v. Vargas, 471 F.3d 255, 261 (1st Cir. 2006) (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993)).  It states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Appellant argues that the district court abused its discretion by admitting Halepaska's testimony, alleging defects relating to all but the last of the rule's requirements.  He contends that Halepaska was unqualified to offer expert testimony to the jury because he had not been trained to distinguish replica and toy guns from real guns, that Halepaska's testimony was not

- 12 -

helpful to the jury, that it was not based on sufficient data, and that the government did not establish that Halepaska had used reliable principles and methods to reach his conclusions.

Although Martinez objected generally to Halepaska's qualification as an expert witness at trial, none of these specific critiques of Halepaska's qualifications as an expert was raised before the district court. Consequently, none of these arguments was preserved for appeal, suggesting the applicability of plain error review. See United States v. Mercado, 412 F.3d 243, 247 (1st Cir. 2005) ("It is well established that an objection on one ground does not preserve appellate review of a different ground." (quoting Negron v. Caleb Brett U.S.A., Inc., 212 F.3d 666, 672 (1st Cir. 2000))); United States v. Diaz, 300 F.3d 66, 75-76 (1st Cir. 2002) (applying plain error review after concluding that an objection to an expert's qualifications was insufficient to preserve a challenge to the reliability of the expert's methods).

Oddly, the government ignores the plain error issue and asserts that the trial judge's ruling should be reviewed for abuse of discretion. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 141 (1997) (stating that a district court's decision to admit or exclude expert testimony is generally reviewed under an abuse of discretion standard). Because of the government's failure to request plain error review, we will apply the standard of review applicable to a properly preserved claim. United States v.

- 13 -

Paulino-Guzman, 807 F.3d 447, 450 n.5 (1st Cir. 2015) ("'[w]hen the government fails to request plain error review,' we may 'review the claim under the standard of review that is applied when the issue is properly preserved below.'" (alteration in original) (quoting United States v. Encarnación-Ruiz, 787 F.3d 581, 586 (1st Cir. 2015))). Accordingly, we review the district court's decision to admit Halepaska's testimony for abuse of discretion, keeping in mind that trial judges are afforded "substantial latitude in the admission or exclusion of opinion evidence." First Marblehead Corp. v. House, 541 F.3d 36, 40 (1st Cir. 2008) (quoting Crowe v. Marchand, 506 F.3d 13, 16 (1st Cir. 2007)).

Turning to Martinez's arguments, we note that two of them miss the mark because they are based on the same false premise. First, Martinez argues that Halepaska was unqualified to offer expert testimony to the jury because he had not been trained to distinguish replica and toy guns from real guns. Second, he asserts that Halepaska did not have a sufficient factual basis to determine whether the guns in the photos were real or replicas because he was unable to examine the actual firearms pictured in the photos. Both arguments are based on the incorrect assertion that Halepaska offered testimony that the guns in the photos were real.

Instead, Halepaska's testimony was limited to opining on the consistency of features he observed on the pictured guns with

- 14 -

features of Glock-manufactured pistols.  Indeed, Halepaska himself stated that he would need to physically examine the gun to determine whether it was real, a replica, or a toy.  Recognizing that he lacked such a factual basis, Halepaska declined to offer any opinion on whether the pictured guns were real.  Moreover, the district judge's qualification of Halepaska as an expert was limited in scope to the comparison of features of the pictured and reference guns.  Specifically, the judge stated: "I believe that from preliminary questions submitted by counsel to Mr. Halepaska, that he is qualified as an expert to testify concerning the association between an object on a photograph and a real pistol and the association as to the characteristics, if they are consistent with the other."[4]

Martinez also argues that Halepaska failed to offer technical or specialized knowledge that would assist the jury in determining a fact in issue and, hence, his testimony was not relevant.  See Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998) ("To be admissible, expert testimony must be relevant not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of

---

[4] Given the context of Halepaska's testimony, we take "real pistol" to refer to Halepaska's use of reference firearms in his analysis rather than his ability to determine whether a gun in a photo is real.

- 15 -

fact to understand or determine a fact in issue." (citations omitted)). Martinez insists that the jurors could have done what Halepaska did -- compare the photos to real firearms -- and reached the same conclusions. This argument misconstrues the way in which Halepaska's testimony was helpful to the jury.

Halepaska did not simply compare the photographs to real firearms. Instead, he first had to determine which, if any, of the 7,000 guns in the FBI's reference firearms collection had features consistent with the items in the photos. This analysis required knowledge of the characteristics of thousands of guns, as well as the expertise to know which characteristics are relevant for distinguishing among different brands and models of guns. A lay person generally would not possess such knowledge. See United States v. Corey, 207 F.3d 84, 96 (1st Cir. 2000) ("[T]estimony identifying the manufacturer of a firearm will usually constitute technical or specialized knowledge that will assist the trier of fact."). His testimony that the guns in the photographs were consistent with Glock pistols, then, was not based simply upon the comparison of guns in photographs with a real gun, but also upon expertise which allowed him to determine the most apt comparator gun.

Martinez also faults the government for failing to elicit explicit testimony from Halepaska about the reliability of his methods. Two features of Halepaska's analysis provide a fair

proxy for such explicit testimony, however. Halepaska's analysis consisted of two steps: first, using his specialized knowledge to pick out the most apt comparator gun, and second, assessing the consistency of the pictured gun with the comparator gun. As explained below, the reliability of the former process is supported by Halepaska's extensive training, and the reliability of the latter process is supported by the simplicity of that task.

The first step of Halepaska's analysis required him to use his specialized knowledge of the features of various brands and models of firearms to choose a gun that was similar to one featured in a photo. The accuracy of this determination depended largely on the quality of the specialized knowledge he applied to the task. Consequently, the reliability of this step could be ascertained by examining the strength of the background from which he derived his expertise. Often in fields based upon specialized knowledge rather than scientific expertise, the "expert's experience and training bear a strong correlation to the reliability of the expert's testimony." United States v. Jones, 107 F.3d 1147, 1155 (6th Cir. 1997). Indeed, the Advisory Committee on the 2000 amendments to the Federal Rules of Evidence noted that "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702 advisory committee's note to 2000 amendments.

Halepaska's training and experience support the reliability of his testimony. Before the district court qualified Halepaska as an expert witness, the agent testified in detail about his training and experience with firearms. He stated that he had undergone "a lengthy and extensive training program" during his four years working in the FBI's laboratory division. That preparation included touring firearms manufacturing facilities, reading articles and books about "the discipline of firearms and tool marks examinations," and hands-on instruction. In this on-the-job training, under the "direct supervision of a qualified and experienced firearms and tool mark examiner," he worked with sample weapons, on which he conducted "hundreds of examinations, thousands of observations." At the end of this training, he passed oral and written examinations to become certified as a firearms and tool mark examiner. He examined at least one hundred firearms for the FBI after completing his training. Moreover, even before beginning his training with the FBI, he had gained experience with firearms by serving as an infantryman in the Marine Corps for five years. In short, his experience with firearms was both considerable and wide-ranging. This specialized knowledge formed the basis for the first step of the "association examination" upon which Halepaska based his expert opinion.

The second step of Halepaska's analysis required him to determine whether the features of the chosen reference gun were

consistent with those of the pictured gun.  In essence, this was

a simple task, requiring a visual comparison of two photographs,

one of the chosen reference gun, the other of the pictured gun.

Because of this simplicity, the district court did not have to

consider technical data, such as the method's error rate or whether

it had been subjected to peer review, in order to make its

reliability determination.  See Kumho Tire Co. v. Carmichael, 526

U.S. 137, 150-52 (1999) ("[T]he factors identified in Daubert may

or may not be pertinent to assessing reliability, depending on the

nature of the issue, the expert's particular expertise, and the

subject of his testimony. . . .  Otherwise, the trial judge would

lack the discretionary authority needed . . . to avoid unnecessary

'reliability' proceedings in ordinary cases where the reliability

of an expert's methods is properly taken for granted . . . ."

(internal quotation omitted)).  Instead, the district court could

reasonably have determined, based upon an explanation of

Halepaska's technique, that his visual comparison of objects was

a reliable method of determining the consistency of their physical

features.

Taken together, Halepaska's extensive experience and the

simplicity of his technique establish a fair proxy for explicit

testimony about the reliability of his methods.[5]  The district

---

[5]  In arguing that the expert testimony was improperly
admitted, appellant also suggests that the evidence presented in

court did not abuse its discretion by qualifying Halepaska as an expert witness.

## C. Reasonableness of the Sentence

Martinez challenges the substantive reasonableness of his sentence, targeting the upward variance applied by the district court when sentencing him for brandishing a firearm during the commission of a crime of violence. See 18 U.S.C. § 924(c)(1)(A)(ii) and (3). Claiming that the court based the increase on a consideration already factored into the Guidelines-recommended sentence -- i.e. his use of weapons -- Martinez argues that it was unreasonable for the sentencing judge to rely on such a factor. The government responds that there was no abuse of discretion in the district court's choice of sentence. See Gall v. United States, 552 U.S. 38, 41 (2007) (holding that substantive

---

support of the illegal possession charges was insufficient to support the verdict. In doing so, however, he incorrectly describes what took place at trial, asserting that "simply showing firearms to the jury to compare with photographs would not be sufficient to find a violation of §§ 922 and 924." Because the jury was not provided with firearms to compare with the photographs, the question of the sufficiency of that kind of evidence is not before us in this case. Beyond this erroneous characterization of the trial evidence, appellant's sufficiency argument is so undeveloped that it is inadequate to raise such a claim on appeal. See Zannino, 895 F.2d at 17. In fact, the government does not even address the sufficiency of the evidence in its brief. This lack of response does not control our determination that the issue was inadequately raised; we simply note it as further evidence of the inadequacy of appellant's briefing. The sufficiency of the evidence claim was preserved below by trial counsel, thereby permitting a developed argument if one had been made.

reasonableness is generally reviewed under the abuse of discretion standard).

The district court found that, taken together, the two carjacking charges and four illegal possession charges produced a Guidelines sentencing range ("GSR") of 57-71 months. Martinez does not challenge that calculation. The court also noted that the Guidelines sentence for the charge of brandishing a firearm during a crime of violence is the minimum term of imprisonment required by the statute, or 84 months. See U.S.S.G. § 2K2.4(b). Defense counsel acknowledged that this term was to be served consecutively with the sentence for the other charges, yielding an overall sentencing range of 141 to 155 months.[6]

Before announcing the sentence, the district court addressed the factors set forth in 18 U.S.C. § 3553(a), noting the particularly violent and dangerous manner in which Martinez committed the carjacking and brandishing crimes here as well as a prior crime which had also involved a firearm. Based on those factors, the district court concluded that Martinez was "prone to using firearms" and that he was "possibly [a] very dangerous person

---

[6] Citing a statement made by trial counsel at the sentencing, appellant's brief states that the Guidelines range is 135 to 147 months. Appellant does not provide any support for this assertion, however; nor does he argue that the district court's calculation of the Guidelines range is incorrect. We do not, therefore, take this to be an attempt to dispute the district court's calculation of the GSR.

to the community." It sentenced Martinez to 71-month terms of imprisonment for each of the carjacking and illegal possession offenses, to be served concurrently, and imposed a consecutive term of 109 months for brandishing a firearm during a crime of violence, a variance of 25 months over the 84-month Guideline sentence.

Appellant relies on United States v. Ofray-Campos in asserting that the variance constitutes an abuse of discretion because the district court considered a factor that was already accounted for in the Guidelines-recommended sentence, specifically his use of weapons. See 534 F.3d 1, 43 (1st Cir. 2008). Because he was convicted of offenses based on his possession and brandishing of guns, he argues, the district court could not base an upward departure on those same incidents of weapon usage.

We did not hold in Ofray-Campos, however, that the consideration of such factors was unreasonable. Instead, we stated that when imposing a variance based on factors that overlap with considerations included in the Guidelines sentence, the district court "must articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the [G]uidelines calculation." Id. (quoting United States v. Zapete-Garcia, 447 F.3d 57, 60 (1st Cir. 2006)).

In this case, the district court articulated several factors demonstrating that Martinez's conduct went beyond the

ordinary conduct proscribed by the statute. It pointed to Martinez's repeated, threatening use of firearms in finding that he was "prone to using firearms" and "possibly very dangerous . . . to the community." Rather than simply brandishing a weapon, Martinez pointed the gun directly at one of the carjacking victims, holding it against her head. Moreover, he brandished the gun in the parking lot of a public train station.

The district court also considered factors related to Martinez's criminal history and personal characteristics. Martinez had previously been convicted for violation of a Puerto Rico weapons law. That conviction was based upon a prior armed robbery, during which he had aimed a firearm at a victim. He had also shot the gun into the air twice, once again in a public place. Combined with Martinez's continued possession of firearms, as demonstrated by the photos found on his phone, the district court could reasonably attribute to Martinez an ongoing and unremitting proclivity toward the use and possession of dangerous weapons. This substantial history of firearms abuse supports the district court's decision to exceed the Guidelines sentence that would apply to a first time offender who had committed the minimum offense conduct.

Martinez also argues that the size of the variance renders his sentence unreasonable. Here, the 180-month sentence imposed by the district court constitutes a 16% increase over the

high end of the Guidelines range.[7]  As an initial matter, the Supreme Court has rejected "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence."  Gall, 552 U.S. at 47.  Where the sentence is outside the Guidelines term, we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance."  Id. at 51.

The roughly two-year variance in Martinez's sentence is "modest," and "not unreasonable in light of the totality of the circumstances" surrounding Martinez's repeated use of firearms in a manner dangerous to the public.  See United States v. Guzman-Fernandez, 824 F.3d 173, 178 (1st Cir. 2016).  Indeed, the 84-month Guidelines sentence is the statutory minimum, reflecting Congress's expectation that it is merely the starting point for determining the appropriate term of imprisonment for a defendant convicted of violating § 924(c)(1)(A)(ii).  The district court's upward variance must be viewed in the context of the entire statutory sentencing range, which begins at 84 months and has an upper bound of life imprisonment.

_____

[7] Appellant suggests that the variance constitutes a 22.4% increase over the upper end of the Guidelines range.  As noted above, he bases his argument on an incorrect Guidelines range referenced by trial counsel during the sentencing.

We thus reject Martinez's contention that his sentence was unreasonable.

Affirmed.