# United States Court of Appeals
## For the First Circuit

No. 14-2140

UNITED STATES OF AMERICA,

Appellee,

v.

LEONEL NARANJO-ROSARIO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Howard, Chief Judge,
Selya, Circuit Judge,
and McConnell, District Judge.*

Lydia Lizarribar-Masini for appellant.
Mainon A. Schwartz, Assistant United States Attorney, with
whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana
E. Bauzá-Almonte, Assistant United States Attorney, Chief,
Appellate Division, and Julia M. Meconiates, Assistant United
States Attorney, were on brief, for appellee.

September 15, 2017

* Of the District of Rhode Island, sitting by designation.

**MCCONNELL, District Judge**.  Leonel Naranjo-Rosario (Naranjo) was convicted of several drug and gun offenses and was sentenced to 188 months in prison.  Mr. Naranjo argues on appeal that the district court erred in denying his motion for judgment of acquittal on three counts of the indictment; it erred in admitting the testimony of the handler of a narcotics-detecting dog; and finally, that the district court erred in calculating his sentence.  After a thorough review, we reject Mr. Naranjo's challenges and affirm the judgment below.

## I.    BACKGROUND

We recount the facts in the light most favorable to the jury verdict, consistent with the court record below. United States v. Noah, 130 F.3d 490, 493 (1st Cir. 1997).

Homeland Security Investigations (HSI), through undercover agent Melvin Alvarado, initiated a sting drug operation in the summer of 2012 wherein Mr. Alvarado would be the boat captain in a scheme to import cocaine from the Dominican Republic into Puerto Rico.

At a July meeting, Mr. Alvarado and co-defendants Mauricio Molina-González and Didier González-Castrillón negotiated a deal in which Mr. Alvarado would buy between 70-80 kilograms of cocaine at $19,500 per kilogram.  In an earlier conversation about his fee, Mr. Alvarado and the co-defendants discussed a transportation fee of between $1200 and $1600 per kilogram of

cocaine.  Mr. Alvarado agreed to provide a car for the delivery: a blue Nissan Pathfinder, which HSI equipped with a tracking device.

Mr. González picked up the Pathfinder from Mr. Alvarado on the day before the scheduled sale.  Mr. González indicated that a woman would deliver the drugs in the Pathfinder the next day, but that the quantity had changed -- the 70-80 kilograms of cocaine were no longer available so she would deliver 45 kilograms instead.  Mr. González drove away in the Pathfinder to a house on Domenach Avenue in San Juan.

On August 2, 2012, HSI observed the defendant take part in a plan to switch the cars used in the drug transaction -- an event that proved critical to the success of the sting operation. Mr. González drove the Pathfinder to a residential area in Carolina and stopped near a green Acura.  The Pathfinder was loaded with the cocaine.  Cisnero Paredes-Reyes (Paredes) was the driver of the Acura and Mr. Naranjo was his passenger.  Mr. Paredes and Mr. González then switched cars -- Mr. Paredes got out of the Acura and into the Pathfinder and Mr. González got out of the Pathfinder and into the Acura as Mr. Naranjo's passenger because Mr. Naranjo moved into the driver's seat.  Mr. Paredes drove the Pathfinder into a residential neighborhood.  Agents lost visual sight of the Pathfinder, but they continued to track the vehicle through the GPS tracker.  Mr. Naranjo also drove away, with HSI surveilling

the Acura.  He drove the Acura into a residential neighborhood and the HSI agents parked at a nearby Walgreens, waiting for further instructions.

The HSI agents saw the Pathfinder again, but this time, Ms. Raiza Rivera-Marin was driving.  Mr. González was no longer in the Acura, but in a gray RAV4 following closely behind Ms. Rivera. The agents stopped the Pathfinder and arrested Ms. Rivera.  A search of the car revealed forty-five bricks of cocaine, with a total weight of 53.7 kilograms.  Agents also arrested Mr. González and his passenger, Mr. Molina, in the RAV4.

Using locations they gleaned from the GPS tracker, HSI agents went to the residential neighborhood in Carolina to continue their investigation.  They targeted a residence belonging to Mr. Paredes -- a location where the Pathfinder had stopped earlier for six minutes.  Agents surveilled Mr. Paredes' residence and ultimately observed Mr. Paredes and Mr. Naranjo pull up to the house in the green Acura.

Agents executed a search warrant on the residence.  They did a security sweep and then a Customs and Border Patrol agent walked through with a drug-sniffing dog.  The dog alerted three times in the bedroom where Mr. Naranjo had been staying as a guest -- a room that he was slow to emerge from when the police announced their arrival.  Agents ultimately seized from that bedroom cash totaling $118,950(some from a five-gallon paint pail and some from

- 4 -

in between the mattress and box spring of the bed), a Glock pistol with an obliterated serial number, a loaded magazine, and money. Mr. Paredes initially said the cash found in his house was not his, but he later claimed at trial that the money belonged to him.

Mr. Naranjo and his co-defendants were indicted for various drug trafficking offenses. Mr. Naranjo was indicted on charges of conspiracy to possess with the intent to distribute cocaine (Count One), see 21 U.S.C. §§ 841(a)(1), 846; conspiracy to import controlled substances from the Dominican Republic (Count Two), see 21 U.S.C. §§ 952, 963; one count of possession with intent to distribute controlled substances (Count Three), see 21 U.S.C. § 841(a)(1); one count of importation of controlled substances (Count Four), see 21 U.S.C. § 952; possession of a firearm in furtherance of a drug trafficking crime (Count Five), see 18 U.S.C. § 924(c)(1)(A); and possession of a firearm with an obliterated serial number (Count Six, see 18 U.S.C. § 922(k)).

During the jury trial, an evidentiary issue arose that merits exposition here because it forms the basis for one of Mr. Naranjo's appellate issues. During the cross-examination of the HSI agent, it was first revealed that a drug-sniffing dog was present during the walkthrough of Mr. Naranjo's bedroom. When the work of this canine investigator came up, the defense lawyer asked for a sidebar. The government indicated that it did not know about the dog, had never received a report about a canine sweep, and had

not designated any evidence about such a sweep. In anticipation of potential exculpatory evidence in the event that the dog did not alert officers to the scent of drugs in the house, the district court ordered the government to provide defense counsel with the dog handler's name. Before the handler could appear in court, Mr. Naranjo filed a motion for a mistrial because the dog handler advised him that the dog alerted to the presence of drugs in three different areas of the bedroom where Mr. Naranjo was staying. He argued government misconduct, prejudice, and also that he would have reconsidered going to trial if he had known about this evidence.

The court indicated that it was inclined to prevent both sides from talking about the dog sweep. But the government argued that the handler needed to testify to clarify the facts for the jury because now that they knew a drug-sniffing dog was involved, they would assume that the dog did not discover any drugs if they did not hear from the dog's handler.

The court asked for briefing about whether the handler's testimony would be that of an expert or a lay witness. The government argued he was a fact witness and would only testify from personal knowledge. Mr. Naranjo argued that the handler was an expert and was not timely disclosed. He also argued that he would need his own expert to challenge the dog's reactions. The court agreed with the government and allowed the dog handler to

testify as a fact witness, but in deference to Mr. Naranjo's concerns, provided three protections: it gave the parties more time to prepare, allowed Mr. Naranjo to hire an expert, and required the handler to first testify outside the presence of the jury so that Mr. Naranjo's counsel would know what he was going to say.

The jury heard the testimony and ultimately found Mr. Naranjo guilty on all counts. Mr. Naranjo moved for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure; that motion was denied. Mr. Naranjo also objected to the pre-sentence report (PSR) on three grounds: that the drug quantity was between 15 and 50 kilograms so his base offense level was incorrect in the PSR; that he should have a reduced offense level because of his role in the offense; and that his firearm convictions should be vacated. Mr. Naranjo was ultimately sentenced to 188 months in prison.

## II. ANALYSIS

Mr. Naranjo contends that his conviction and sentence cannot stand as a result of the district court's errors. We discuss these alleged errors seriatim, but ultimately conclude that nothing that Mr. Naranjo raises in his appeal requires reversal.

## A.   RULE 29

Mr. Naranjo's first point of error involves the district court's denial of his motion for judgment of acquittal under Rule 29.  Mr. Naranjo argues that the district court erred in denying the acquittal motion because the government failed to present sufficient evidence of his participation in the drug conspiracy, his possession of a firearm in furtherance of the drug conspiracy, and his knowing possession of a firearm with an obliterated serial number.

We consider an appeal on this ground de novo.[1] United States v. Santos-Rivera, 726 F.3d 17, 23 (1st Cir. 2013). Specifically,

> we examine the evidence, both direct and circumstantial, in the light most favorable to the jury's verdict. We do not assess the credibility of a witness, as that is a role reserved for the jury. Nor need we be convinced that the government succeeded in eliminating every possible theory consistent with the defendant's innocence.  Rather, we must decide whether that evidence, including all plausible inferences drawn therefrom, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged crime.

---

[1] In a post-briefing, pre-argument letter to the court, the government refers to the record and argues that Mr. Naranjo failed to preserve his Rule 29 argument as to Count One.  An unpreserved claim only merits a review for clear and gross injustice.  See United States v. Gobbi, 471 F.3d 302, 309 (1st Cir. 2006).  Also referring to the record, Mr. Naranjo argues that he did preserve his sufficiency claim on Count One and, as such, de novo review applies.  We need not decide whether Mr. Naranjo's claim is preserved because we hold that, even assuming favorably to him that he is entitled to de novo review, there was sufficient evidence for a reasonable jury to convict him on Count One.

United States v. Troy, 583 F.3d 20, 24 (1st Cir. 2009) (citations and internal quotation marks omitted).

### 1. Count One – Drug Trafficking Conspiracy

Mr. Naranjo was convicted of participating in a drug trafficking conspiracy.

> To establish that a conspiracy existed, the government had to prove beyond a reasonable doubt that each defendant knowingly and voluntarily agreed with others to commit a particular crime. Such an agreement may be express or tacit, that is, represented by words or actions, and may be proved by direct or circumstantial evidence.

United States v. Rivera Calderón, 578 F.3d 78, 88 (1st Cir. 2009) (citations omitted). Once the conspiracy is proved, in order "[t]o establish that the defendants belonged to and participated in the drug conspiracy, the government must show two kinds of intent: 'intent to agree and intent to commit the substantive offense.'" United States v. Bristol–Mártir, 570 F.3d 29, 39 (1st Cir. 2009) (quoting United States v. Hernández, 218 F.3d 58, 65 (1st Cir. 2000)).

"Under established case law, members of a conspiracy are substantively liable for the foreseeable criminal conduct of the other members of the conspiracy." United States v. Hurley, 63 F.3d 1, 22 (1st Cir. 1995) (citing Pinkerton v. United States, 328 U.S. 640 (1946)). However, the government need not show that the defendant knew "the full extent of the drug-trafficking conspiracy

or the identities of all the co-conspirators to be convicted." United States v. Santos-Soto, 799 F.3d 49, 58 (1st Cir. 2015).

In this case, the government presented evidence from which the jury could find that Mr. Naranjo participated in a scheme to sell 70-80 kilograms of cocaine that were imported from the Dominican Republic to Puerto Rico. Mr. Naranjo is of Dominican descent and was living in New York. At the time of the events of this case, he was visiting Puerto Rico, staying in Mr. Paredes' home for approximately one week. Around the time Mr. Naranjo arrived in Puerto Rico, Mr. González met with Mr. Alvarado about importing cocaine through Mr. González's Dominican contacts. Mr. Alvarado indicated that an individual from the Dominican Republic would deliver the cocaine. Mr. Alvarado gave Mr. González a blue Pathfinder to deliver the drugs; Mr. González told him that a woman would be the driver. Mr. Naranjo was involved in the car switch on the day of the drug transaction -- Mr. González gave the Pathfinder to Mr. Paredes and got in the Acura with Mr. Naranjo who drove the car away from the scene. Based on Mr. Naranjo's heritage and his travel patterns, a jury could have inferred that he was the individual to whom Mr. González referred. GPS data provided the jury with an inference that Mr. Paredes drove the Pathfinder into a residential neighborhood and picked up the female driver (Raiza Rivera) and the drugs. Mr. Naranjo drove the Acura to Mr. Paredes' home and was found there by police in a bedroom

with stacks of cash and a loaded gun; a drug-sniffing dog detected the presence of drugs in three locations in the bedroom. United States v. Rodríguez, 735 F.3d 1, 10 (1st Cir. 2013) (finding that it would be reasonable for a jury to conclude that participant in a drug exchange knew the purpose of the exchange and was a member of the conspiracy). Mr. Naranjo's involvement in this intricately planned sequence of events strongly suggests that he was involved in the drug trafficking conspiracy. United States v. Gomez-Pabon, 911 F.2d 847, 853 (1st Cir. 1990).

Based on the direct and circumstantial evidence, when viewed in the light most favorable to the verdict against Mr. Naranjo, a reasonable jury could find that he knowingly and voluntarily agreed to participate in the drug trafficking conspiracy. See Rivera Calderón, 578 F.3d at 88.

2. Count Five – Possession of a Firearm in Furtherance of a Drug Trafficking Crime

According to 18 U.S.C. § 924(c)(1)(A), "any person who, during and in relation to any . . . drug trafficking crime . . ., uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such . . . drug trafficking crime [be sentenced according to the mandatory minimum sentences of this subsection]." We must affirm a conviction under this section if the evidence was sufficient to show that Mr. Naranjo "(1) committed a drug

- 11 -

trafficking crime; (2) knowingly possessed a firearm; and (3) possessed the firearm in furtherance of the drug trafficking crime." United States v. Vázquez-Castro, 640 F.3d 19, 25 (1st Cir. 2011).

The jury concluded that the government put forth sufficient evidence at trial to establish beyond a reasonable doubt that Mr. Naranjo possessed the firearm in furtherance of the drug conspiracy. While the evidence showed that the gun was not physically on Mr. Naranjo's person, the court can consider whether he had constructive possession of the gun. United States v. Sanchez-Badillo, 540 F.3d 24, 31 (1st Cir. 2008); United States v. Wight, 968 F.2d 1393, 1397-98 (1st Cir. 1992). In order to prove constructive possession, the government would have to prove that Mr. Naranjo "knowingly [had] the power and the intention at a given time of exercising dominion and control over a firearm . . . directly or through others." Wight, 968 F.2d at 1398. The evidence showed that the gun was found in a paint bucket in the bedroom where Mr. Naranjo was staying in Mr. Paredes' house. And, when police arrived at the house, the jury learned that Mr. Naranjo did not immediately open the door of the bedroom to let them in, supporting the reasonable inference that Mr. Naranjo was stalling because he was hiding something, i.e., the gun. The jury could then reasonably assume -- both from the gun's presence in Mr. Naranjo's bedroom and from his attempt to hide it -- that he knew

the gun was there, that he had access to it, and that he consequently had dominion and control over it. See United States v. Nuñez, 852 F.3d 141, 145 (1st Cir. 2017). We therefore conclude that there was enough evidence for the jury to find that Mr. Naranjo had constructive possession of the gun.

Once possession is resolved, the government then had to prove a nexus between the drug crime and the gun. The factors to consider include "whether the firearm was loaded, whether the firearm was easily accessible, the proximity of the firearm to the drugs, and the surrounding circumstances." United States v. Robinson, 473 F.3d 387, 400 (1st Cir. 2007); see also United States v. Marin, 523 F.3d 24, 28 (1st Cir. 2008) (concluding that a jury may infer intent to possess a firearm in furtherance of drug trafficking from the proximity of the gun to the drug proceeds). In this case, because the evidence showed that the conspiracy involved large amounts of drugs and money, the gun was found in Mr. Naranjo's room in a bucket also holding large amounts of cash, and the gun was illegal and had an obliterated serial number, the jury reasonably could conclude that Mr. Naranjo possessed the gun in furtherance of the drug trafficking crime.

3. Count Six – Possession of a Firearm with an Obliterated Serial Number

Mr. Naranjo's final point of error on the denial of the Rule 29 motion involves the charge of possessing a firearm with an

obliterated serial number. In order to prove this claim, the government had to show that Mr. Naranjo possessed the gun, the gun moved through interstate commerce, and he had knowledge that the serial number was obliterated. United States v. Ayala-García, 574 F.3d 5, 12 (1st Cir. 2009). Because the court has determined that the evidence supported the finding that Mr. Naranjo possessed the firearm and because he does not contest that the gun moved through interstate commerce, we begin and end our analysis on the third element.

The evidence of Mr. Naranjo's knowledge of the obliterated serial number is largely circumstantial. See id. (a defendant's knowledge of the obliterated serial number may be "circumstantially established by his possession of the firearm"). A reasonable jury could infer from the defendant's delay in opening the door to police that he knew the gun had been altered and that he needed to hide it. The gun was hidden in a bucket of money and either or both the money and gun had drug residue that caused the drug-sniffing dog to alert. Based on the location and proximity of the gun to the money (presumably some payment for Mr. Naranjo's services in the scheme), a reasonable jury could conclude that Mr. Naranjo possessed the gun, must have handled it, and therefore must have seen that the number had been obliterated.

<u>Conclusion on Rule 29 Motion</u>

The verdict on the drug conspiracy and the two firearms counts was supported by the record.[2]  After reviewing the evidence in the light most compatible with the verdict and resolving all credibility disputes in the verdict's favor, we find that a rational jury could conclude that Mr. Naranjo was guilty beyond a reasonable doubt and that the district court did not err in denying his motion for acquittal.

B.    ADMISSION OF THE DOG HANDLER'S TESTIMONY

The presence of a drug-sniffing dog and his handler, Agent Daniel Domínguez, at the scene of Mr. Naranjo's arrest arose during another agent's trial testimony to the surprise of attorneys for both Mr. Naranjo and the government.  The trial court actively managed the fallout of this newly discovered witness, taking a break during trial to hear Agent Domínguez's qualifications and proposed testimony, to give the parties extra time to prepare, and for Mr. Naranjo to secure an expert of his own on this subject matter.  Mr. Naranjo objected to this testimony, but was overruled.

---

[2] Mr. Naranjo failed to argue below that the court should have granted an acquittal on Counts 2, 3, and 4; therefore, that argument is waived.  <u>United States</u> v. <u>Winchenbach</u>, 197 F.3d 548, 551 n.2 (1st Cir. 1999).  Even if it had not been waived, Mr. Naranjo failed to make any serious substantive arguments for acquittal on these counts in his appellate briefing.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990).

Agent Domínguez testified that the dog alerted to drugs three times in the bedroom where Mr. Naranjo was staying. On cross-examination, Agent Domínguez acknowledged that the dog's three alerts did not establish the presence of drugs in the house.

On appeal, Mr. Naranjo argues that the handler's testimony was that of an expert and should have been excluded because the government did not disclose it in a timely manner and that there were no documents or official reports from the sweep for Mr. Naranjo to use to challenge the dog's alerts.[3] He further argues that he would not have gone to trial had he known about this evidence. The government argues that the district court did not err in allowing the dog handler to testify as a lay witness, but avers that even if the witness was an expert, any error in allowing him to testify was harmless because of the procedural protections the court put in place.

We must first determine whether Agent Domínguez's testimony rose to the level of an expert or whether he was a fact witness before undertaking an analysis of whether the court erred.

---

[3] Mr. Naranjo's counsel in this appeal, who was also his trial counsel, raises an argument that the government's failure to disclose the dog handler rendered her representation ineffective at trial. "[O]nly in exceptional cases where there are no critical facts in dispute and the record is sufficiently developed will we entertain an ineffective assistance of counsel claim on direct appeal." United States v. Offray-Campos, 534 F.2d 1, 34 (1st Cir. 2008). This argument is not developed beyond mere contention and, as such, not appropriate for us to consider now.

Rule 702 of the Federal Rules of Evidence governs expert witnesses and provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

United States v. Martinez-Armestica, 846 F.3d 436, 442 (1st Cir. 2017) (quoting Fed. R. Evid. 702). Agent Domínguez testified to the jury that he observed several objects in the room where Mr. Naranjo was staying. That testimony is fact based, did not require any specialized knowledge or training, and the court did not err in allowing Agent Domínguez to testify as such.

On the other hand, Agent Domínguez also testified about the dog's reactions when he scoured the room, that the dog alerted at different locations, and what those alerts meant in terms of the investigation. Agent Domínguez received training to teach him to handle a trained dog and to interpret the dog's reactions. He necessarily relied on his training and his experience in working with drug-sniffing dogs in order to give that testimony. Because most jurors have never experienced similar scenarios, his testimony rested "upon an experience confessedly foreign in kind to [the jury's] own." Kumho Tire Co. v. Carmichael, 526 U.S. 137,

- 17 -

149 (1999) (alteration in original) (quoting Learned Hand, Historical and Practical Considerations Regarding Expert Testimony, 15 Harv. L. Rev. 40, 54 (1901)). Therefore, we find that Agent Domínguez gave expert testimony in part and the trial court erred in finding that the dog handler was not an expert under Rule 702. We review the admission of this expert testimony for abuse of discretion. United States v. Maxwell, 254 F.3d 21, 25 (1st Cir. 2001). However, "[t]o succeed in obtaining a reversal on appeal, a defendant must prove both an abuse of discretion and prejudice." United States v. Alvarez, 987 F.2d 77, 85 (1st Cir. 1993).

After reviewing the record as a whole, we find that the district court did not abuse its discretion in these circumstances. The ultimate admission of the dog handler's testimony came after the district court's extended and deliberative process to manage this unexpected contingency during trial. The court suspended the trial, provided Mr. Naranjo's counsel with extra time to prepare, and provided ample access to Agent Domínguez's testimony both before the trial resumed and outside of the jury's presence during trial. Additionally, Mr. Naranjo's counsel had evidence of the dog's certification in order to safeguard the reliability of the evidence. See Florida v. Harris, 568 U.S. 237, 246-47 (2013) (stating in the context of probable cause that "evidence of a dog's satisfactory performance in a certification or training program

can itself provide reason to trust his alert"). And Mr. Naranjo was provided with the opportunity at trial to counter this indicia of reliability when his own expert presented evidence that a positive alert by a drug-sniffing dog does not necessarily establish the possession of drugs. See id. at 247 ("A defendant, however, must have an opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witness.")

Not only was there no abuse of discretion, critically Mr. Naranjo was not prejudiced by the error in this regard. While the district court did err in allowing the testimony, the government presented other, compelling evidence that Mr. Naranjo was involved in the conspiracy and constructively possessed the gun in furtherance of the conspiracy. The multiple safeguards the district court built in to ensure that Mr. Naranjo was not prejudiced, combined with the very strong evidence of Mr. Naranjo's guilt, rendered any such error harmless. As to Mr. Naranjo's argument that he may have pled guilty if he knew of the dog handler's existence, he has made no showing that plea negotiations would have resulted in his favor such that we should "reverse the reasoned decision of the trial court." United States v. Rosario-Peralta, 199 F.3d 552, 560 (1st Cir. 1999). Because we find that the district court did not abuse its discretion in admitting the dog handler's testimony and Mr. Naranjo was not prejudiced by any

error in admitting any part of that testimony, his appeal on this ground is rejected.

## C. SENTENCING ISSUES

Mr. Naranjo argues that the court erred in calculating his guideline range because it overstated the drug quantity determination and applied a two-level enhancement for his role as a manager in the conspiracy. We review a district court's factual determinations at sentencing for clear error. United States v. Mullins, 778 F.3d 37, 42 (1st Cir. 2015); United States v. Al-Rikabi, 606 F.3d 11, 14 (1st Cir. 2010).

We turn to the district court's drug quantity determination first. The court can take into account "all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that the defendant jointly undertook." U.S.S.G. § 1B1.3 cmt. n.3(D); see United States v. Flores-de-Jesús, 569 F.3d 8, 37 (1st Cir. 2009). Specifically, Mr. Naranjo is responsible for "drugs [the defendant] personally handled or anticipated handling, and, under the relevant conduct rubric, for drugs involved in additional acts that were reasonably foreseeable by him and were committed in furtherance of the conspiracy." United States v. Sepulveda, 15 F.3d 1161, 1197 (1st Cir. 1993).

The evidence at trial supported the court's conclusion that the conspiracy that Mr. Naranjo participated in involved

between 70-80 kilograms. A recording of a conversation between Mr. González and Mr. Alvarado showed their agreement whereby Mr. Alvarado would purchase and Mr. González would deliver the 70-80 kilos. During the drug delivery, Mr. Naranjo was involved in the driver and car swap; he drove the Acura away after Mr. Paredes got into the Pathfinder. That Pathfinder was later stopped with 53.7 kilograms[4] of cocaine in it. Mr. Naranjo was later observed driving the Acura to Mr. Paredes' house where the Pathfinder had stopped earlier that day. The $118,950 found in the paint bucket in the room Mr. Naranjo occupied in Mr. Paredes' house tied in to the $1600 per kilogram delivery fee that Mr. Alvarado quoted in his conversations with Mr. González ($1600 x 75 kilos = $120,000). The court's determination of the drug quantity for sentencing was not clearly erroneous.

Mr. Naranjo's final issue on appeal, grounded in the sentence imposed, relates to the two-level enhancement, finding that he was an organizer/manager of the drug conspiracy. The enhancement is prescribed for a defendant who "was an organizer, leader, manager, or supervisor in any criminal activity" involving one to three other participants. U.S.S.G. § 3B1.1(c). "The

---

[4] The base offense level of 36 that the court assigned was based on a drug quantity between 50-150 kilos and the forty-five bricks of cocaine seized weighed 53.7 kilos. Therefore, the base offense level of 36 was not clearly erroneous even considering only the actual amount of cocaine seized from the Pathfinder.

enhancement, therefore, has two elements; to warrant its use, the sentencing court must supportably find that (i) the criminal activity involved at least two, but fewer than five, complicit individuals (the defendant included); and (ii) in committing the offense, the defendant exercised control over, managed, organized, or superintended the activities of at least one other participant." Al-Rikabi, 606 F.3d at 14 (citing United States v. Cruz, 120 F.3d 1, 3 (1st Cir. 1997)(en banc)).

The focus of the parties' arguments is on the second element and so the question is did the district court clearly err in finding that Mr. Naranjo exercised control over the activities of another participant in the conspiracy? The answer, after applying a clear error standard, is no. The evidence supports the district court's conclusion that Mr. Naranjo was Mr. Paredes' supervisor in the drug trafficking scheme. See United States v. Andujar, 49 F.3d 16, 25 (1st Cir. 1995). Mr. Naranjo's role in the car exchanges demonstrates his control over Mr. Paredes. See United States v. Prange, 771 F.3d 17, 34 (1st Cir. 2014) (to justify a managerial enhancement, the evidence must show that the defendant controlled criminal actors). Mr. Paredes drove the Acura on the day of the drug transaction and Mr. Naranjo was the passenger. Mr. Naranjo stayed in the Acura while Mr. Paredes switched cars and drove in the Pathfinder to load the drugs. After the transaction, the drug proceeds were found in Mr. Naranjo's

room, not in a common room or another room in Mr. Paredes' house, indicating that Mr. Naranjo was in control over the receipt and distribution of the money.  This is a close call, but "when there are two plausible views of the record, the sentencing court's adoption of one such view cannot be clearly erroneous."  United States v. St. Cyr, 977 F.2d 698, 706 (1st Cir. 1992).  And after reviewing the evidence, we are not "left with the definite and firm conviction that a mistake has been committed." United States v. Arbour, 559 F.3d 50, 53 (1st Cir. 2009)(quoting United States v. Brown, 298 F.3d 120, 122 (1st Cir. 2002)).  **Affirmed.**

### III. CONCLUSION

For the reasons given above, Mr. Naranjo's conviction and sentence are AFFIRMED.